STATE of Missouri, Respondent,

v.

Clinton Eugene WOODROME,
Appellant.

No. WD 75460.

Missouri Court of Appeals,
Western District.

Sept. 10, 2013.

Chris Koster, Attorney General, Jessica P. Meredith, Assistant Attorney General, Jefferson City, MO, for respondent.

Erika R. Eliason, Assistant Public Defender, Columbia, MO, for appellant.

Before Division Three Judges: LISA WHITE HARDWICK, Presiding Judge, and MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Judge.

This is a case addressing the reasonableness—or unreasonableness as it were—of one's expectation of privacy in stolen property. Clinton Woodrome ("Woodrome") appeals the judgment of the Circuit Court of Bates County, Missouri ("trial court"), convicting him, after a jury trial, of three counts of receiving stolen property, § 570.080. On appeal, Woodrome claims that the trial court erred in denying his motion to suppress evidence and then admitting evidence obtained in what Woodrome argues was an unlawful search conducted without a search warrant and absent exigent circumstances. We affirm.

## Factual and Procedural Background

On August 13, 2009, several law enforcement officers, including Detective Joseph Botta and Sergeant Mike Mullaney, went to the Arrowhead RV and Trailer Park to execute arrest warrants for two men: Woodrome and Scott Shankle ("Shankle"). When the officers entered the RV park, the park's owner, Jack Kimlin, approached the officers to determine why they were there. The officers showed Mr. Kimlin the mugshots of both Woodrome and Shankle and asked whether Mr. Kimlin knew the men. Mr. Kimlin confirmed that Woodrome rented a lot from him at the RV park, but that Mr. Kimlin knew Woodrome by a false name Woodrome had provided Mr. Kimlin. Mr. Kimlin also told the officers that Shankle, whom he knew as "Scooter," stayed with Woodrome in the park, as did Woodrome's girlfriend. Mr. Kimlin told the officers that he did not believe Woodrome and Shankle were currently present on the premises. However, Mr. Kimlin showed the officers to Woodrome's lot, which could be seen from the highway adjacent to the RV park.

On Woodrome's rented lot were a fifth-wheel RV trailer and several other vehicles, including a blue panel-type construction truck, a black Dodge "dually" pickup truck, and a white Pace trailer, which was hitched to the Dodge pickup. The officers approached the RV to attempt to execute the arrest warrant; one officer knocked on the door to the RV while another "covered" the front end of the trailer. No one answered the officers' knocks. Detective Botta, who was covering the front end of the RV trailer, saw the panel with the VIN number for the trailer. He ran the VIN number over his police radio and learned that the RV had been reported as having been stolen. The officers then looked around the RV. The officers noticed that all of the locks on the construction truck

had been drilled out, which was an indication that the vehicle had been stolen. A look through the window of the construction truck revealed that the ignition had also been drilled out. The officers then proceeded to run the VIN number for the black Dodge pickup, which had also been reported stolen. Finally, the officers noticed that the VIN panel for the Pace trailer had been removed, which indicated to the officers that it had also likely been stolen.

At about this time, Shankle returned to the RV park. The police officers approached Shankle, who was riding a stolen motorcycle, and arrested him. Shortly thereafter, Woodrome returned to the RV park on a motorcycle, accompanied by his girlfriend. The officers, who were in uniform, attempted to stop Woodrome to arrest him; but Woodrome refused to stop the motorcycle, sped off to the back of the RV park where he abandoned the motorcycle, and Woodrome and his girlfriend escaped on foot. Woodrome was not apprehended until days or weeks later.

The stolen vehicles at the RV park were seized by the officers and were taken to two different tow lots where they were searched. The search of the vehicles produced incriminating evidence. The vehicles were ultimately released either to their owners or to insurance companies who had paid the owners for the loss of the stolen property.

Woodrome was charged with four counts of receiving stolen property, § 570.080, for having been in possession of the fifth-wheel RV trailer, the black Dodge dually truck, the blue construction truck, and the Pace pull-behind trailer. Woodrome's trial counsel filed a motion to suppress the evidence seized by the police on August 13, 2009, arguing that the officers did not have the lawful authority to search the vehicles on his RV lot leased from the RV park.

The trial court denied Woodrome's motion to suppress, and the evidence seized was admitted at trial. Woodrome was found guilty on three counts and acquitted on the count relating to the black Dodge pickup. Woodrome appeals.

## Standard of Review

■ Appellate courts review the trial court's ruling on a motion to suppress in the light most favorable to the trial court's ruling and defer to the trial court's determinations of credibility. *State v. Schroeder*, 330 S.W.3d 468, 472 (Mo. banc 2011). Review is limited to determining if the ruling is supported by substantial evidence. *Id.* Analysis of whether law enforcement conduct violates the Fourth Amendment is a legal issue that is reviewed *de novo*. *Id.*

■ "In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Nelson*, 334 S.W.3d 189, 193 (Mo. App. W.D.2011). The facts and inferences therefrom are reviewed in the light most favorable to the trial court's ruling, and all contrary inferences are disregarded. *Id.* "Our review is limited to a determination of whether there was sufficient evidence to support the trial court's findings." *Id.* "We defer to the trial court's superior opportunity to judge the credibility of the witnesses at the suppression motion hearing." *Id.*

■ "Ordinarily, appellate courts will reverse a ruling on a motion to suppress only if it is clearly erroneous and will reverse admission of testimony only if the trial court abused its discretion." *Foster v. State*, 348 S.W.3d 158, 161 (Mo.App. E.D. 2011).

## Analysis

■ The Fourth Amendment to the United States Constitution, which applies to the States by way of the Fourteenth Amendment, provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. A person who seeks to have evidence against him suppressed on Fourth Amendment grounds "has the burden of establishing that his ... rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The person arguing for suppression meets his initial burden of proving he is aggrieved by the search and seizure through showing that he had a reasonable expectation of privacy in the area or item that was searched or seized. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 63, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). This standard has two parts: (1) "whether the individual by his conduct has exhibited an actual (subjective) expectation of privacy," and (2) "whether the individual's subjective expectation of privacy is one that society is prepared to accept as reasonable." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (internal quotations omitted).

### Expectation of Privacy in Curtilage Surrounding Dwelling

Woodrome's argument on appeal shifts the focus of his reasonable expectation of privacy from his "dwelling" to the "RV lot." In light of the fact that Woodrome's "dwelling" was *stolen*, we find it no coincidence.

Woodrome argues in his appellate brief:

Officer Botta and the other officers were told by Mr. Kimlin that Mr. Woodrome was not on the property prior to enter-

ing the lot. The officers' business ended when Mr. Kimlin informed them that Mr. Woodrome and Mr. Shankle were not currently on the property.

This argument borders on frivolity.

▋ The officers possessed an *arrest warrant* for Woodrome and Shankle. In speaking with the owner of the RV park, the officers confirmed the "dwelling" in which both resided. Though the RV park owner commented that he did not believe Woodrome and Shankle were currently present at the RV located on Woodrome's rented lot in the RV park, there is no RV-park-owner-thinks-I'm-not-there exception to the lawful attempted execution of an arrest warrant. Instead, upon confirming that Woodrome and Shankle resided in the RV on one of the RV park lots, the officers had the authority to determine for themselves whether Woodrome and Shankle were present in the RV and, if so, to effect their arrest pursuant to the authority of the warrant for their arrests. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *See also United States v. Davis*, 288 F.3d 359, 362 (8th Cir.2002) (citations omitted) (finding that since the suspect "was living at the trailer property, the warrant for his arrest permitted officers to execute the warrant at that location."). When law enforcement officers have legitimate business on property (*i.e.*, executing an arrest warrant), they may properly enter areas of curtilage open to the public. *State v. Edwards*, 36 S.W.3d 22, 26 (Mo.App. W.D. 2000). Here, to attempt to execute the arrest warrant, the officers did not enter the RV trailer; instead, they knocked and,

in plain view of the outside of the dwelling, discovered a VIN number that produced confirmation that the RV trailer was stolen property. Even then, the officers did not impound and search the stolen property until *after* arresting Shankle and *after* Woodrome fled from arrest.

▋ Instead of complaining about searches to the property found on Woodrome's rented RV trailer lot—which was stolen property—Woodrome argues that, because he rented the RV lot from Kimlin, he had a reasonable expectation of privacy in *the lot* (and consequently the property, albeit stolen, on the lot). An examination of the relevant case law refutes Woodrome's assertion. A person has no reasonable expectation of privacy in an open lot or field, even if the lot or field is enclosed, and even if he validly leases or owns the lot or field. *See Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924) ("[T]he special protection accorded by the Fourth Amendment to the people in their persons, houses, papers, and effects' is not extended to the open fields."); *State v. Hunziker*, 799 S.W.2d 610, 613 (Mo.App. W.D.1990) (acknowledging that the "open fields" doctrine applies in Missouri). Accordingly, the fact that Woodrome rented the lot from Kimlin did not give him a reasonable expectation of privacy in the lot itself.

▋ Further, although Woodrome's point on appeal carefully avers that he had a legitimate interest in the *lot* that he rented, it is clear from the body of his argument that Woodrome's claimed expectation of privacy depends upon the concept of *curtilage*. The Fourth Amendment's protection of a person's home extends to the curtilage around the home. *State v. Edwards*, 36 S.W.3d 22, 26 (Mo.App. W.D. 2000). The curtilage "is generally defined as the enclosed space of ground and buildings immediately surrounding the dwelling house." *Id.* The term "curtilage" "has no

application to any building not used as a dwelling." *United States v. Wolfe*, 375 F.Supp. 949, 958 (E.D.Pa.1974). In effect, the curtilage concept creates an extension of the dwelling house. So if the dwelling is not subject to search, neither is the curtilage. *See State v. Berry*, 92 S.W.3d 823, 829–30 (Mo.App. S.D.2003) (search of curtilage area behind dwelling without a warrant was improper and evidence should have been suppressed). By contrast, if a dwelling is subject to search, as by a warrant, then the curtilage may also be searched pursuant to the warrant, even if it is not specifically mentioned in the warrant. *State v. Potter*, 72 S.W.3d 307, 314 (Mo.App. S.D.2002) (and cases cited therein). In other words, the curtilage receives no greater protection than does the dwelling it surrounds. And "because the Fourth Amendment protects people, not places, the scope of protection should be based upon the degree of privacy an individual should reasonably expect rather than the venerable concept of curtilage." *Commonwealth v. Cihylik*, 337 Pa.Super. 221, 486 A.2d 987, 992 (Ct.1985) (internal quotation omitted).

Herein lies the bigger problem for Woodrome: though the officers were lawfully entitled to enter the RV lot where they had confirmed Woodrome and Shankle resided (in an RV on the lot) for the purpose of attempting to execute the arrest warrant they possessed, the dwelling itself was *stolen property*, thereby raising the initial question of what legitimate expectation of privacy Woodrome possessed in a *stolen* RV and any surrounding curtilage to his *stolen* place of dwelling.

### Reasonable Expectation of Privacy in Stolen Property

In this case, the dwelling that is surrounded by the claimed curtilage was the stolen RV in which Woodrome had been living. While it is certainly possible for a mobile home, RV, or trailer to constitute a dwelling (with its attendant curtilage) for Fourth Amendment purposes, we do note that these types of homes are different than other permanently stationary homes in that they can be relatively easily moved and, consequently, stolen.[1]

Section 542.296.1, RSMo 2000, states that:

A person *aggrieved* by an unlawful seizure made by an officer and against whom there is a pending criminal proceeding growing out of the subject matter of the seizure may file a motion to suppress the use in evidence of the property or matter seized.

(Emphasis added.) "The language of Section 542.296.1, conferring standing to file a motion to suppress upon an 'aggrieved' person, is nothing more than a codification of the standing requirements under the Fourth Amendment...." *State v. Brown*, 382 S.W.3d 147, 157 (Mo.App. W.D.2012).

And, as we explained in *State v. Ramires*, 152 S.W.3d 385, 393 (Mo.App. W.D.2004), after describing the holdings in *Rakas v. Illinois* and *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980):

[O]nly one basis remains for establishing standing to file a motion to suppress evidence with respect to the Fourth Amendment, that basis being the legitimate expectation of privacy in the place or thing searched. In other words, in order for a defendant to be *aggrieved* by an unlawful search and seizure sufficient to allow his filing of a motion to sup-

---

1. We note that these homes are considered vehicles. They have VIN numbers, and their owners pay personal property tax on them instead of real estate tax.

press under the Fourth Amendment, seeking to invoke the exclusionary rule, there has to be a showing that he has a legitimate expectation of privacy in the place or thing searched.

(Emphasis added.) Moreover, courts are increasingly declaring that a person has no reasonable expectation of privacy in stolen property. *See, e.g., United States v. Caymen,* 404 F.3d 1196, 1200 (9th Cir.2005); *United States v. Tropiano,* 50 F.3d 157, 161 (2d Cir.1995); *Hendley v. State,* 58 So.3d 296, 299 (Fla.Dist.Ct.App.2011); *Hicks v. State,* 929 So.2d 13, 16 (Fla.Dist. Ct.App.2006).

 These cases follow the lead of our United States Supreme Court's pronouncement that:

A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of *his* Fourth Amendment rights infringed.

*Rakas,* 439 U.S. at 134, 99 S.Ct. 421, 58 L.Ed.2d 387 (emphasis added). This court has similarly concluded that, whether couched as a "standing" analysis or a "legitimate expectation of privacy" analysis, a defendant cannot claim an infringement of the defendant's Fourth Amendment rights when the place or thing searched is stolen property. *See State v. Walters,* 636 S.W.2d 122, 124 (Mo.App. W.D.1982).

 Here, the RV trailer in which Woodrome had been living was stolen property. In fact, the evidence presented at trial created a strong inference that Woodrome and his girlfriend actually stole the RV trailer themselves.[2] In any event, at Woodrome's suppression hearing, Woodrome did not testify or present any evidence, while the State produced evidence that the trailer was stolen property. Because Woodrome did not satisfy his burden of establishing that he had a reasonable expectation of privacy in a stolen RV trailer,[3] he had no resulting expectation of privacy in the curtilage area surrounding the stolen RV trailer. Accordingly, he can make no claim that his rights were violated on Fourth Amendment grounds by the officers' cursory examination of the vehicles on the rented RV lot or their subsequent seizure of those vehicles. Therefore, regardless of whether the VIN numbers and other indicia of theft noted by the officers were in plain view when they

---

2. Woodrome and his girlfriend were seen on the surveillance camera of a convenience store directly across the highway from the RV dealership from which the RV had been stolen just a few hours before the theft. The convenience store and dealership were miles from where Woodrome lived at the time. Woodrome is seen on the surveillance video staring in the direction of the dealership for several minutes. Later, the stolen trailer is seen leaving the convenience store lot, although the video footage does not reveal who or what vehicle is pulling the trailer. While Woodrome testified at his trial that he purchased that RV trailer and it was sheer coincidence that he happened to be at that convenience store at approximately the same time that the trailer he eventually purchased had been stolen, the jury was free to disbelieve his testimony.

3. *See State v. Ramires,* 152 S.W.3d 385, 395 (Mo.App. W.D.2004):

[A]lthough the State, in accordance with § 542.296.6, has the burden of production and persuasion to show by a preponderance of the evidence that the defendant's motion to suppress should be overruled, the defendant, in accordance with § 542.296.1, has the initial burden of proving that he is *aggrieved* by the search and seizure, or stated another way, that he has Fourth Amendment standing to challenge the search and seizure by showing that he has a legitimate expectation of privacy in the place or thing searched.

(Emphasis added.)

were at the RV park to execute arrest warrants for Woodrome and Shankle, Woodrome can make no claim that the evidence obtained from property searched and seized by the officers should have been suppressed at his trial. Simply put, Woodrome cannot claim that *he* was *aggrieved* by a search of stolen property that, coincidentally, *he* did not own.

### Conclusion

Because the trial court did not err in denying Woodrome's motion to suppress and in admitting the evidence offered against him at his trial, we affirm the judgment of the trial court.

LISA WHITE HARDWICK, Presiding Judge, and CYNTHIA L. MARTIN, Judge, concur.