

# In the Missouri Court of Appeals

## Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED100856 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| | ) | 1322-CR02378-01 |
| | ) | |
| JOE L. JOHNSON, | ) | Honorable Steven R. Ohmer |
| | ) | |
| Respondent. | ) | Filed: April 8, 2014 |

### Introduction

The State of Missouri (State) appeals the trial court's grant of Respondent Joe Johnson's (Johnson) motion to suppress evidence seized by police officers from Johnson. In this interlocutory appeal, the State asserts that the trial court erred in granting Johnson's motion to suppress because the evidence was found in plain view during a lawful detention. We reverse.

### Background

The State charged Johnson as a prior offender with the class C felony of possession of a controlled substance. Prior to trial, Johnson filed a motion to suppress evidence of a bag of heroin, in which Johnson argued the court should suppress, because Officer Daniel Chamblin (Officer Chamblin) seized it during an illegal detention. During the suppression hearing, the trial

judge found Officer Chamblin, the sole witness at the hearing, "totally credible." Officer Chamblin testified to the following facts.

On the night of April 9, 2013, around 10:45 p.m., Officer Kristopher Clark (Officer Clark) and Officer Chamblin traveled northbound in a marked police vehicle on Hamilton approaching Wells in the City of St. Louis. Johnson and two other men were congregating closely together in front of a known drug house. Upon seeing the police car, the two men quickly walked away from Johnson and entered the house. Johnson walked southbound toward where the officers had parked their car on the curb. The officers had not activated their emergency lights or siren on their vehicle.

Officers Clark and Chamblin exited their vehicle and approached Johnson for the purpose of conducting a field interview. Officer Clark requested Johnson's pedigree information. Johnson voluntarily complied with the request and stated, "My name is Joe Johnson. I think I've got some traffic warrants." Following Johnson's statement, Officer Chamblin handcuffed Johnson for the officers' safety and according to standard police protocol. Officer Chamblin testified that "from [his] experience, when a subject advises they have warrants they are usually correct." However, Officer Clark performed a computer inquiry, which revealed that Johnson had no traffic warrants. Upon this discovery, Officer Chamblin began to remove the handcuffs. Because it was dark, Officer Chamblin used a flashlight to see the handcuffs' keyhole. While removing the handcuffs, Officer Chamblin observed a "small plastic bag with tan powder protruding" from underneath Johnson's wristwatch. Officer Chamblin suspected this bag contained heroin and notified Officer Clark of his discovery; Officer Clark then arrested Johnson.

2

Johnson's motion to suppress asserted that the "detention, arrest, search and seizure of evidence" violated his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution as well as Sections 10, 15, and 18(a) of the Missouri Constitution, because the officers had no probable cause meriting Johnson's arrest or search. The trial court granted Johnson's motion to suppress the bag of heroin, finding the State failed to provide sufficient evidence to justify the search of Johnson as being lawful. The State filed this interlocutory appeal. See Section 547.200.1(3).[1]

## Standard of Review

In general, we will reverse a trial court's ruling on a motion to suppress only if it is "clearly erroneous." State v. Edwards, 280 S.W.3d 184, 188 (Mo. App. E.D. 2009) (citing State v. Sund, 215 S.W.3d 719, 723 (Mo. banc 2007)). A ruling is clearly erroneous when we are "[left] with a definite and firm impression that a mistake has been made." State v. Dienstbach, 313 S.W.3d 201, 204 (Mo. App. E.D. 2010) (citing State v. Dixon, 218 S.W.3d 14, 18 (Mo. App. W.D. 2007)). We review "all evidence and reasonable inferences therefrom in the light most favorable to the trial court's ruling." Id. at 203. The State bears the burden of producing evidence showing that the motion to suppress should be overruled. State v. Bradshaw, 99 S.W.3d 73, 77 (Mo. App. E.D. 2003). Whether conduct violates the Fourth Amendment is a question of law, which we review de novo. State v. Ross, 254 S.W.3d 267, 273 (Mo. App. E.D. 2008); see also State v. Pike, 162 S.W.3d 464, 472 (Mo. banc 2005) (stating same analysis applies to cases brought under Missouri Constitution as under United States Constitution).

## Discussion

The State's sole point on appeal asserts that the trial court clearly erred in granting Johnson's motion to suppress evidence because that evidence was found in plain view during a

---

[1] All statutory references are to RSMo. (2000), unless otherwise indicated.

lawful detention. The State argues that Johnson's detention was lawful because he voluntarily informed the officers that he may have warrants, which created reasonable suspicion of criminal activity. Furthermore, the State asserts that Johnson's detention was not more intrusive than necessary for an investigatory stop, and the evidence was found in plain view. We agree.

## A. Consensual Encounter

Johnson argued that the initial stop was a detention, whereas the State contends it was a consensual encounter, outside the scope of the Fourth Amendment. There are three categories of police-citizen encounters: (1) an arrest requiring probable cause, (2) an investigative detention requiring only reasonable suspicion based upon specific articulable facts, and (3) a consensual encounter. See United States v. Mendenhall, 446 U.S. 544, 553-55 (1980); Dunaway v. New York, 442 U.S. 200, 208-09 (1979); United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975). A consensual encounter does not implicate the Fourth Amendment until the officer restrains the individual's liberty to the extent that a reasonable person would feel that he or she was not free to leave or decline the officer's questions. Mendenhall, 446 U.S. at 554. If the encounter is consensual, police officers have liberty to question individuals, "even without reasonable suspicion." Sund, 215 S.W.3d at 723; see Florida v. Bostick, 501 U.S. 439, 434 (1991). However, the encounter remains consensual only as long as a reasonable individual would feel free to leave and end the conversation. Bostick, 501 U.S. at 434.

Here, Officer Chamblin and Officer Clark's initial encounter with Johnson was consensual. There is no "litmus-paper test" for distinguishing between a consensual encounter and a seizure. Florida v. Royer, 460 U.S. 491, 506 (1983). "A seizure does not occur simply because a police officer approaches an individual and asks a few questions." Bostick, 501 U.S. at 434. Officer Clark requested Johnson's pedigree information, and Johnson voluntarily

4

complied. At this point, as confirmed by Officer Chamblin's testimony, Johnson was free to disregard the officers and go about his business. See id. Furthermore, Johnson made no attempt to leave and neither officer blocked Johnson's path, drew their weapons, or intimidated Johnson into answering their initial questions. See State v. Rowe, 67 S.W.3d 649, 656 (Mo. App. W.D. 2002) (holding encounter was consensual because neither officer drew weapons, physically touched defendant, nor used language in tone of voice to suggest defendant was not free to leave); see also Mendenhall, 446 U.S. at 554. For these reasons, we conclude the initial encounter between Johnson and the officers was consensual.

## B. Investigative Detention/Terry Stop

A consensual encounter becomes a detention when the individual no longer has a reasonable belief that he or she could terminate the encounter or refuse to answer questions. Mendenhall, 446 U.S. at 554; Sund, 215 S.W.3d at 723. When that occurs, a seizure has taken place and "the encounter moves into the second category of an investigatory detention," a Terry stop. State v. Daniels, 221 S.W.3d 438, 442 (Mo. App. S.D. 2007) (citing Mendenhall, 446 U.S. at 554). A Terry stop permits an officer to perform a minimally invasive investigatory stop if the officer has a reasonable suspicion supported by "specific articulable facts" that those stopped are engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 20 (1964). An investigatory detention under Terry involves a two-fold analysis: (1) whether the circumstances support reasonable suspicion justifying the initial stop, and (2) whether the officers' actions were "reasonably related in scope to the circumstances which justified" the initial interference. State v. Waldrup, 331 S.W.3d 668, 673 (Mo. banc 2011) (citing Terry, 392 U.S. at 19-20). An evaluation of whether the reasonable suspicion standard has been met requires an examination of the totality of

5

the circumstances. United States v. Arvizu, 534 U.S. 266, 273 (2002); Waldrup, 331 S.W.3d at 673.

First, the officers here had reasonable suspicion warranting an investigatory detention. While the standard for reasonable suspicion is less than probable cause, there still must be some minimally objective justification supporting the suspicion. Waldrup, 331, S.W.3d at 673; see United States v. Cortez, 449 U.S. 411, 418 (1981) (stating reasonable suspicion analysis is not concerned with "hard certainties, but with probabilities"). "The standard is whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate." Terry, 392 U.S. at 21-22; State v. Lanear, 805 S.W.2d 713, 716 (Mo. App. W.D. 1991) (citing State v. Lasley, 583 S.W.2d 511, 518 (Mo. banc 1979)). "[I]t is proper to take into account a police officer's trained instinctive judgment." Lanear, 805 S.W.2d at 716 (citing Sibron v. New York, 392 U.S. 40, 78 (1968)).

Here, Johnson's statement that "I think I've got some traffic warrants" gave the officers reasonable suspicion based on this specific articulable fact. While Johnson's statement created some uncertainty, "officers could detain the individual to resolve [an] ambiguity." Illinois v. Wardlow, 528 U.S. 119, 125 (2000); see also Arvizu, 534 U.S. at 277 (noting "[a] determination that reasonable suspicion exists...need not rule out the possibility of innocent conduct"). Although there was uncertainty as to whether Johnson had warrants or not, his statement created reasonable suspicion sufficient to warrant an investigative detention. As Officer Chamblin testified, his experience revealed that "when a subject advises they have warrants they are usually correct." Officer Chamblin's street experience as a police officer provided a foundation from which Johnson's statement, "I think I've got some traffic warrants," produced reasonable articulable suspicion, warranting an investigative detention.

Regarding the second step of an investigatory detention under Terry analysis, that the officer's actions must have been reasonably related in scope to the justifying circumstances of the initial stop, police officers may check for weapons or take any additionally reasonable steps that are necessary to protect their personal safety or to maintain the status quo during the stop. United States v. Hensley, 469 U.S. 221, 235 (1985); State v. Pfleiderer, 8 S.W.3d 249, 255 (Mo. App. W.D. 1999); see also State v. Miller, 974 F.2d 953, 957 (8th Cir. 1992) (use of handcuffs can function within proper scope of Terry stop if employed as reasonable precaution relevant to totality of the circumstances). Officers must use "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Royer, 460 U.S. at 500. The investigative detention should not last "longer than is necessary to effectuate the purpose of the stop." Id. However, courts have widely accepted handcuffing during an investigatory detention under conditions in which the officer believes he needs to take reasonably necessary precautions to protect himself or the public or to maintain the status quo. E.g id.; see also Pfleiderer, 8 S.W.3d at 255.

The totality of the circumstances justified the police officer's decision to handcuff Johnson temporarily, which included these articulated facts: (1) it was dark at 10:45 p.m., (2) Johnson had been closely congregating in front of a known drug house with two other men, (3) the two other men with Johnson quickly walked away from Johnson and entered the known drug house upon seeing the police car, and (4) Johnson had stated to the officers, "I think I've got some traffic warrants." Officer Chamblin further stated, "We placed him in handcuffs for our safety and detained him pending further investigation." Officer Chamblin agreed that it is standard police protocol to detain and handcuff someone who has warrants, making this an

7

investigatory detention as Johnson was no longer free to leave. See Daniels, 221 S.W.3d at 442 (citing Mendenhall, 446 U.S. at 554).

While officers may lawfully use handcuffs during an investigatory detention under Terry, the duration of time during which the subject is in handcuffs must not exceed the necessary amount of time to conduct an investigation. Pfleiderer, 8 S.W.3d at 256-57. When the stop lasts longer than necessary, the seizure becomes an arrest. United States v. Sharpe, 470 U.S. 675, 685 (1985). Furthermore, should a detention continue "beyond the time reasonably necessary to [a]ffect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure." State v. Weddle, 18 S.W.3d 389, 394 (Mo. App. E.D. 2000); see also Royer, 460 U.S. at 500. In Weddle, a police officer handcuffed the defendant and continued to search the defendant and his car after the initial purpose of the investigatory stop had been satisfied. Id. The court held that the duration of time in which police had handcuffed the defendant lasted longer than was necessary under the scope of the investigatory stop. Id. Because the original purpose of the stop was to investigate whether the defendant was intoxicated, any further detention after determining that the defendant was not intoxicated lacked necessary reasonable suspicion. Id.

Unlike in Weddle, here, Officer Chamblin handcuffed Johnson for only as long as it took to conduct the computer inquiry for warrants, which was the purpose of the investigatory detention. When the computer inquiry revealed that Johnson had no warrants, Officer Chamblin began to remove Johnson's handcuffs. Officer Chamblin determined based upon the totality of the circumstances that he needed to handcuff Johnson for the officers' safety and to investigate the issue of whether Johnson had warrants. The handcuffs remained on Johnson only as long as necessary. See Pfleiderer, 8 S.W.3d at 255 (stating that officers may use handcuffs during a

8

Terry stop for personal safety or to maintain status quo). Because Johnson remained handcuffed only for the short few minutes it took Officer Clark to perform a computer inquiry, the use of handcuffs did not become more intrusive than necessary. See Royer, 460 U.S. at 500 (holding that investigatory detentions may last only as long as necessary to satisfy the purpose of the stop).

Therefore, because the circumstances supported the officers' reasonable articulable suspicion to justify the initial detention and the officers' actions were reasonably related in scope to those circumstances, we find the officers' investigative detention of Johnson was lawful.

## C. Plain View Doctrine

Finally, the State argues the evidence here was in plain view, rather than the product of a search. A police officer in a lawful position from which he can plainly see an object may seize it as long as there is probable cause to believe that it is connected with crime. Arizona v. Hicks, 480 U.S. 321, 323 (1987); State v. Johnston, 957 S.W.2d 734, 742 (Mo. banc 1997). The plain view doctrine requires three elements: (1) the officer must be properly in a position where he can see the area, (2) the officer must find the incriminating evidence "inadvertently," and (3) the evidence must be immediately apparent. United States v. Brown, 460 U.S. 730, 736-737 (1983) (citing Coolidge v. New Hampshire, 403 U.S. 443, 465-68 (1971)). An officer cannot violate the Fourth Amendment if he has lawfully arrived at the place from which the evidence could be plainly viewed. Id. at 738.

Here, while Officer Chamblin was in the process of ending the investigative detention by unhandcuffing Johnson, Officer Chamblin was in a lawful position to see the bag of heroin tucked under Johnson's wristwatch. The heroin was in plain view when Officer Chamblin went to remove Johnson's handcuffs. Because Officer Chamblin had lawfully detained and

9

handcuffed Johnson, his position in removing the handcuffs was proper. In using his flashlight to help remove the handcuffs, Officer Chamblin immediately saw in plain view the heroin, and, as such, did not violate Johnson's Fourth Amendment rights.

Point granted.

## Conclusion

Because the initial consensual encounter between Johnson and the officers created reasonable suspicion to justify an investigative detention under <u>Terry</u> when Johnson said, "I think I've got some traffic warrants," Officer Chamblin was in a lawful position from which to plainly view and then seize the bag of heroin under Johnson's watch. Under these circumstances, the trial court's suppression of this evidence was clearly erroneous. We reverse.

_____
Gary M. Gaertner, Jr., Judge

Robert M. Clayton III, C.J., concurs.
Gary Dial, S. J, concurs.

10