

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD84272 |
| | ) | |
| v. | ) | OPINION FILED: January 18, 2022 |
| | ) | |
| KENNETH L. WYKERT, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clinton County, Missouri**
The Honorable Ryan Wesley Horsman, Judge

Before Division Three:  Lisa White Hardwick, Presiding Judge, Gary D. Witt, Judge and
Edward R. Ardini, Jr., Judge

Kenneth Wykert ("Wykert") was charged with felony possession of a controlled

substance, section 579.015[1], and misdemeanor unlawful possession of drug paraphernalia,

section 579.074.  Following a bench trial, the Circuit Court of Clinton County ("trial court")

found Wykert guilty on both counts and sentenced him as a persistent offender to ten years'

imprisonment on the felony offense and to a fine on the misdemeanor offense.  Prior to

trial, Wykert filed a motion to suppress, and the parties stipulated it could be taken with

---

[1] All statutory references are to R.S.Mo. 2016, as updated by the most recent supplement unless otherwise indicated.

the case and ruled on after the trial court heard the evidence at the bench trial. On appeal, Wykert argues: (1) the trial court erred in admitting at trial statements and evidence obtained during the pat-down of Wykert because Officer Ward ("Officer Ward") lacked consent or reasonable suspicion to pat-down Wykert; and (2) the trial court erred in admitting statements and evidence obtained following Wykert's interview with Officer Ward in his patrol car because Wykert was subjected to custodial interrogation without first being warned of his *Miranda*[2] rights. Finding no error, we affirm.

## Factual Background[3]

Officer Ward was dispatched to 506 South Chestnut in Clinton County, Missouri as part of an effort to locate a missing person, L.D. Officer Ward went to the location to speak to Wykert and gather information that could be useful in the search effort. When Officer Ward arrived, he found Wykert in the parking lot with his hands and pockets full of various items. Wykert was speaking with L.D.'s mother and grandmother in the parking lot, and Officer Ward observed that they were visibly upset with Wykert. Officer Ward asked Wykert if he would be willing to speak with him about L.D., and Wykert agreed. To separate Wykert from L.D.'s mother and grandmother, Officer Ward asked Wykert if he would like to speak in Officer Ward's patrol car instead of the parking lot, and Wykert agreed. Before getting into the patrol car, Officer Ward asked Wykert if he could pat him down to ensure he did not have any weapons on him because Wykert had his hands full of items and was wearing cargo shorts with bulky items in the pockets. Wykert agreed that

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[3] The facts are recited in a light most favorable to the verdict. *Ferguson v. State*, 325 S.W.3d 400, 404 n.2 (Mo. App. W.D. 2010).

Officer Ward could pat him down. During the pat-down, Officer Ward placed his hand over the left pocket of Wykert's cargo shorts and felt a bulge in his pocket that Officer Ward believed could be a gun in a holster. Officer Ward asked Wykert if he had a gun in his pocket. Wykert reached his hand toward the pocket and "wrenched" his hand into the pocket. Officer Ward grabbed Wykert's wrist and removed it from the pocket, which exposed a digital scale and a black zipper bag located in the pocket. Officer Ward did not confiscate the items or ask Wykert about them at the time.

Officer Ward and Wykert then sat in Officer Ward's patrol car to discuss L.D.'s possible whereabouts. Wykert entered the car willingly and sat in the front seat next to Officer Ward. The vehicle remained unlocked as they spoke. By this point, another officer, Officer White, had arrived at the scene and was conversing with L.D.'s family members in the parking lot. During the conversation in the patrol vehicle, Officer Ward asked Wykert about the scale he saw in his pocket. Wykert initially responded by saying the scale was used to measure jewelry or coins, but Officer Ward indicated he did not believe Wykert. Officer Ward asked Wykert if he had any drugs on him. Wykert acknowledged he "had a quarter gram of meth." Officer Ward asked Wykert to hand it to him, and Wykert pulled out a zippered bag from his pocket and handed it to Officer Ward. The zippered bag contained a broken pipe and clear plastic baggies containing a substance resembling methamphetamine. Officer Ward confiscated the items and later transported them to Missouri State Highway Patrol lab for analysis, which revealed the substance in the baggies to be methamphetamine.

A short time later, Deputy Patterson of Dekalb County arrived and continued questioning Wykert about L.D. in the parking lot of the residence. Officer Ward then arrested Wykert for the controlled substances and transported him to the Cameron Police Department for further questioning. In the interview room, Officer Ward read Wykert his *Miranda* rights and spoke to Wykert about L.D. and the confiscated items from Wykert's pocket. Wykert again admitted to having possessed methamphetamine and smoking it earlier that day.

The trial court overruled the motion to suppress and found Wykert guilty of one count of felony possession of a controlled substance and one misdemeanor count of unlawful possession of drug paraphernalia. Wykert was sentenced as a prior and persistent offender to ten years' imprisonment on the felony offense, and a fine was assessed on the misdemeanor offense. This appeal follows.

Wykert raises two points on appeal. Point I alleges error in the admission of all statements and evidence obtained as a result of the pat-down search as lacking consent or articulable suspicion. Point II alleges error in the admission of all statements and evidence obtained following the interview in the patrol car as a custodial interrogation without proper *Miranda* warnings.

## Discussion

### Standard of Review

Appellate courts review the trial court's ruling on a motion to suppress in the light most favorable to the trial court's ruling and defer to the trial court's determinations of credibility. *State v. Schroeder*, 330 S.W.3d 468, 472 (Mo. banc 2011). Review is limited

4

to determining if the ruling is supported by substantial evidence. *Id.* Analysis of whether law enforcement conduct violates the Fourth Amendment is a legal issue that is reviewed *de novo*. *Id.*

"In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Woodrome*, 407 S.W.3d 702, 706 (Mo. App. W.D. 2013). "The facts and inferences therefrom are reviewed in the light most favorable to the trial court's ruling, and all contrary inferences are disregarded." *Id.* "Our review is limited to a determination of whether there was sufficient evidence to support the trial court's findings." *Id.* "We defer to the trial court's superior opportunity to judge the credibility of the witnesses at the suppression motion hearing." *Id.*

**Point One; Pat-down search**

Wykert argues the trial court's ruling to admit evidence obtained as a result of Wykert's pat-down search was error because Officer Ward did not have consent or reasonable articulable suspicion to pat-down Wykert, and all evidence obtained therefrom was fruit of the poisonous tree. "The Fourth Amendment of the United States Constitution protects individuals' right to be free from 'unreasonable searches and seizures.'" *State v. Ledbetter*, 599 S.W.3d 540, 544 (Mo. App. W.D. 2020) (quoting U.S. Const. amend. IV). The protections of the Fourth Amendment have been extended via the Fourteenth Amendment to defendants in state court prosecutions. *Id.* "There are three categories of police-citizen encounters: (1) an arrest requiring probable cause, (2) an investigative

5

detention requiring only reasonable suspicion based upon specific articulable facts, and (3) a consensual encounter." *State v. Johnson*, 427 S.W.3d 867, 872 (Mo. App. E.D. 2014).

"A consensual encounter does not implicate the Fourth Amendment until the officer restrains the individual's liberty to the extent that a reasonable person would feel that he or she was not free to leave or decline the officer's questions." *Id.* "If the encounter is consensual, police officers have liberty to question individuals, even without reasonable suspicion." *Id.* (internal quotations omitted). "For consent to be valid it must be freely and voluntarily given by a person with the authority to consent and the search must not exceed the scope of the consent given." *State v. Leavitt*, 993 S.W.2d 557, 563 (Mo. App. W.D. 1999). "Consent is freely and voluntarily given if, considering the totality of the circumstances, the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so." *Id.*

As to Wykert's consent to the pat-down, Wykert does not suggest that the evidence showed a lack of consent to the search. Rather, Wykert argues "the facts do not support the credibility of [Officer Ward's] testimony[.]" Wykert argues, "[a]lthough the appellate court should generally defer to credibility findings of the trial court, credibility findings are 'never conclusive, however,' and they are still subject to the clearly erroneous standard." App. Br. 12 (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). To support the contention the trial court clearly erred in finding Officer Ward credible, Wykert argues: (1) his own testimony that he did not consent to the search contradicted Officer Ward's testimony; (2) Wykert's hands being full of items would have prevented him from "wrenching" his own hand in his pocket to reveal the scale and pipe; and (3) if it were true

6

Wykert had prior experience with law enforcement as the trial court found, Wykert would have known not to consent to a search that would have yielded incriminating evidence.

Wykert's arguments fail. As an initial matter, Wykert relies almost exclusively on evidence viewed contrary to our standard of review. On appeal, facts and inferences are reviewed in the light most favorable to the trial court's ruling, and all contrary inferences are disregarded. *Woodrome*, 407 S.W.3d at 706. By citing his own testimony that contradicted Officer Ward's testimony, Wykert asks us to view the evidence in a light unfavorable to the ruling, which we cannot do. Moreover, because we defer to the trial court's superior position to judge the credibility of the witnesses, we need only find sufficient evidence to support the trial court's ruling. *See id.* Here, the trial court's ruling is supported by sufficient evidence. The trial court stated that it found Officer Ward "completely credible." Officer Ward testified that he asked Wykert to sit in his patrol car to speak about L.D. Officer Ward testified, "[Wykert] had a whole bunch of stuff in his hands and his pockets, so I asked him before he got in the car if I could pat him down. [Wykert] consented to that." When patting down Wykert, Officer Ward testified,

> When I got to his left cargo pocket, I felt a bulge. I asked him if it was a gun in his pocket. He began to reach for it and wrench his hand -- wrench his hand inside his pocket. I just grabbed his wrist and removed his hand, told him not to reach; and as I pulled his hand out, I seen that he had a digital scale and a black bag, a zipper bag, in his pocket. I left all those items in there, just asked him to sit in my car.

Any logical contradictions regarding Wykert's ability to reach into his own pockets were elicited by defense counsel on cross-examination. When pressed on how Wykert reached into his pocket, Officer Ward testified he could not remember exactly how Wykert reached

7

his hand into his pocket, only that it was possible Wykert shifted items from one hand to another, set some items down on the hood of the car, or threw out a cigarette he was holding. The trial court found credible Officer Ward's account of the interaction with Wykert, a finding to which we defer. Officer Ward's testimony provided sufficient evidentiary support for the trial court's determination that Wykert consented to the pat-down. Accordingly, the trial court's determination that Wykert consented to the pat-down was not clearly erroneous. We, therefore, need not address whether Wykert's pat-down was supported by reasonable suspicion.

Point one is denied.

**Point Two; Wykert's admissions**

In Wykert's second point on appeal, he argues the trial court erred in admitting statements obtained following Wykert's interview with Officer Ward in the patrol car because Wykert was subjected to custodial interrogation without first being warned of his *Miranda* rights.[4] "A criminal suspect is entitled to *Miranda* warnings, consistent with the Fifth Amendment right against self-incrimination, once the suspect is subjected to a custodial interrogation." *State v. Wright*, 585 S.W.3d 360, 367 (Mo. App. W.D. 2019). "Custodial interrogation occurs either when a suspect is formally arrested or under any other circumstance where the suspect is deprived of his freedom of action in any significant way." *Id.* (internal quotations omitted). "'Custody' for purposes of *Miranda* warnings, 'is

---

[4] The statements which Wykert sought to suppress were all made to Officer Ward, prior to Officer Ward's confiscation of the drugs and paraphernalia removed from Wykert's pocket. We express no opinion whether Wykert was in custody subsequent to the seizure of the illegal items, and before Officer Ward informed Wykert that he was under arrest.

8

a term of art used to specify circumstances that are thought to present a serious danger of coercion.'" *Id.* at 368. "In deciding whether a suspect is 'in custody' at a particular time, courts examine the extent of the restraints placed on the suspect during the interrogation in light of whether a reasonable person in the suspect's position would have understood the situation to be one of custody." *Id.* "Custody is determined by an examination of the totality of the circumstances." *Id.*

In *State v. Werner*, 9 S.W.3d 590 (Mo banc. 2000), our Supreme Court outlined factors to consider in the court's determination of whether a person is in custody based on the suspect's freedom to leave and the purpose, place, and length of interrogation. These indicia of custody include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest;
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to answer questions;
> (4) whether strong arm tactics or deceptive stratagems were employed during questioning;
> (5) whether the atmosphere was police dominated; or,
> (6) whether the suspect was placed under arrest at the termination of questioning.

*Wright*, S.W.3d at 368 (quoting *Werner*, 9 S.W.3d at 595). The factors listed above are not an exhaustive list; courts may also consider the individual's "personal background, experience, familiarity with police questioning, maturity, education, and intelligence." *Werner*, 9 S.W.3d at 595-96. Our Supreme Court has also directed that "[i]t is not necessary that all of the foregoing indicia be present to find custody," and the affirmative

9

presence of one or more of the first three factors during questioning "would tend to mitigate the existence of custody at the time of questioning." *Id.* at 596 (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)).

Wykert argues the *Werner* factors establish the existence of custody. He argues he was in custody because: Officer Ward interviewed Wykert in a patrol car; Officer Ward did not inform Wykert he could refuse questioning; Officer Ward initiated contact with Wykert; Officer Ward removed Wykert from other people, particularly friends and family, at the scene; Wykert was placed under arrest following questioning; and Officer Ward was questioned in a "police dominated" atmosphere because two uniformed officers were present at the scene. Wykert argues this case is similar to *Werner*, wherein the Court held the defendant was in custody because he was not told he could refuse questioning, was taken to the police station, and was placed under arrest after questioning. *See id.* at 589.

Despite the factors argued by Wykert, we find he was not subjected to custodial interrogation. The trial court found Wykert voluntarily spoke with Officer Ward in his patrol car and was free to leave or refuse to answer questions at any time. Officer Ward testified that he asked Wykert to get in the patrol car for their conversation because when he arrived, the missing woman's mother and grandmother were present and they "were not happy" with Wykert. Wykert was not in handcuffs, nor was he restrained in any way. Wykert was not removed from the scene of the initial contact and taken to the police station. Officer Ward testified that the doors to the patrol car remained unlocked throughout the entire conversation. Wykert sat in the front seat of the patrol car with Officer Ward, and Officer Ward asked Wykert questions regarding L.D.'s whereabouts and Wykert's

10

possession of drug paraphernalia in a calm demeanor without using an intimidating or forceful tone. The conversation was brief, roughly fifteen minutes in duration. There was no evidence of strong-arm tactics or deceptive stratagems used to coerce Wykert into speaking with Officer Ward.

It is true Wykert was separated from other people at the scene to speak with Officer Ward and that Officer Ward asked Wykert to speak in a patrol car, but Officer Ward testified that was only to provide Wykert with a *more* suitable environment for conversation, given L.D.'s family's observable anger toward him. It is hard to find that Officer Ward separated Wykert from individuals capable of lending him "moral support" in the moment. *See Griffin*, 992 F.2d at 1352. Although Officer Ward never explicitly informed Wykert he was not under arrest or that he could leave the situation, an individual is not in custody "merely because they are not expressly told in particular words that they can leave whenever they want to, in the absence of circumstances indicating some restraint." *State v. Brooks*, 185 S.W.3d 265, 277 (Mo. App. W.D. 2006).

Moreover, *Werner* is easily distinguishable from this case. In *Werner*, the defendant, a special-needs student with an I.Q. of 78, was removed from school by a detective and driven to the police station for questioning regarding the death of the defendant's relative. *Werner*, 9 S.W.3d at 593. The detective marked on the school's sign-out sheet that he was taking "custody" of the defendant. *Id.* The defendant was placed in an interview room by himself for two hours before questioning began while his family member was questioned in a separate interview room. *Id.* at 593-94. The detective testified that he would not have allowed an attorney to be present if the defendant had requested an

11

attorney. *Id.* at 598. The totality of the circumstances in *Werner*, notably the police-dominated atmosphere, restraint of the defendant, and the defendant's youth and low intelligence, led to a determination the defendant was in custody and a reasonable person under those circumstances would not have felt free to leave. *Id.* The totality of the circumstances here, based upon the evidence the trial court found credible, does not favor such a finding.

Rather, the totality of the circumstances in this case resembles the Court's holding in *State v. Glass*, 136 S.W.3d 496 (Mo. banc 2004). In *Glass*, the Court held that a custodial interrogation did not occur because the defendant (Glass) willingly accompanied a police officer to the station to provide a written statement. *Id.* at 509. There, the police officer's interaction with Glass began with a "voluntary discussion" outside Glass's home. *Id.* Glass agreed to go the sheriff's office in the officers' patrol car, but there was no evidence the officers' "presence was to restrain, threaten or intimidate Glass into accompanying them to the station." *Id.* "[B]ecause Glass went voluntarily to the sheriff's office, he was not 'seized' or 'detained' such that his Fourth Amendment rights were infringed[.]" *Id.* at 510. Similarly, Officer Ward asked Wykert if they could sit in Officer Ward's patrol car to discuss L.D.'s whereabouts. Officer Ward testified, "I asked him if we could sit in my car to be separated from the grandmother, [L.D.'s] mother and grandmother. He consented to that." Officer Ward further testified that he did not force Wykert to sit in the car, that Wykert sat willingly in the car in the front seat, and that Officer Ward never locked the door to where Wykert was not free to leave. Considering the totality of the circumstances, notably Wykert's assent to a voluntary discussion with Officer Ward, a reasonable person

12

in Wykert's position would have believed he was free to leave the conversation; thus, Wykert was not in custody. Accordingly, the trial court did not clearly err in overruling Wykert's motion to suppress. Point two is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur