Gary M. Gairtner, Jr., Judge
Introduction
David R. Galen (Defendant) appeals the trial court's judgment entered upon his conviction for driving while intoxicated (DWI). He argues the trial court erred in overruling his motion to suppress and admitting evidence obtained after a traffic stop because the officer lacked probable cause or reasonable suspicion to conduct the stop. Because we find under the totality of circumstances that the officer had reasonable suspicion justifying an investigatory stop, we affirm.
Background
In the early morning hours on May 24, 2014, Officer Chris Beard ("Officer Beard") was on duty in a marked police car parked in the parking lot of a strip mall. Officer Beard was there in order to perform a walk-through of a bar in the strip mall that was closing at 1:30 a.m. The bar was the only business open in the strip mall at that time. At approximately 1:07 a.m., Officer Beard observed a man later identified as Defendant seated in the driver's seat of a pickup truck. Officer Beard saw Defendant vomit out the driver's side window and immediately drive away. Defendant drove to a gas station adjoining the strip mall. As Defendant did so, he ran over a curb with the rear passenger tire of his truck. Defendant drove up to one of the gas pumps at the gas station and parked. Officer Beard followed in his patrol car and drove past the gas pumps. When Officer Beard was almost out of sight, he noticed Defendant drive away from the gas pump and attempt to leave the parking lot.
Officer Beard followed Defendant as he turned onto an outer road and then onto an interstate on-ramp. Defendant activated his left turn signal, but then he turned off the turn signal and did not change lanes to merge until a few seconds later. Officer Beard believed that due to the angle of the on-ramp and traffic, as well as the fact that the on-ramp lane then became an exit lane for a rest stop, vehicles on the interstate would not have seen Defendant's signal and would not have known whether he planned to merge left onto the interstate or continue straight to exit toward the rest stop. Officer Beard believed this was an improper lane change.
Officer Beard activated his patrol car's lights and conducted a traffic stop of Defendant. Officer Beard approached Defendant's truck and spoke to Defendant through the open passenger window. Officer *553 Beard smelled a strong odor of intoxicants coming from Defendant. Officer Beard administered field sobriety tests and a preliminary breath test, after which Officer Beard placed Defendant under arrest and transported him to the Warren County jail. An officer at the jail conducted a breath test, and the result showed Defendant's blood alcohol content (BAC) was .097.
The State charged Defendant as a chronic DWI offender with the class B felony of driving while intoxicated. Defendant filed a motion to suppress evidence obtained pursuant to the traffic stop, arguing that Officer Beard lacked probable cause or reasonable suspicion to conduct the stop. The trial court denied Defendant's motion to suppress, as well as his objection to the admission of such evidence at trial, and found Defendant guilty after a bench trial. The trial court sentenced Defendant to eight years' imprisonment. This appeal follows.
Discussion
In Defendant's sole point on appeal, he argues that the trial court erred in denying his motion to suppress and in admitting evidence at trial obtained pursuant to the traffic stop, because Defendant argues the stop was illegal in that Officer Beard lacked probable cause or reasonable suspicion to perform the stop. We disagree.
We review the denial of a motion to suppress to determine whether there was substantial evidence to support the decision, and we will only reverse where the trial court's ruling is clearly erroneous. State v. Nylon, 311 S.W.3d 869, 884 (Mo. App. E.D. 2010) (citing State v. Gaw, 285 S.W.3d 318, 319-20 (Mo. banc 2009) ). We consider evidence presented both at the suppression hearing and at trial. State v. Pike, 162 S.W.3d 464, 472 (Mo. banc 2005). We view the evidence and all reasonable inferences from the evidence in the light most favorable to the trial court's ruling, and we defer to the trial court's credibility determinations and factual findings. Nylon, 311 S.W.3d at 884. However, we review the question of whether conduct violates the Fourth Amendment de novo. Id. Where the trial court made no factual findings, we presume the trial court found facts in accordance with its decision, and we may affirm "under any reasonable theory supported by the evidence." State v. Abeln, 136 S.W.3d 803, 808 (Mo. App. W.D. 2004) (quoting State v. Kampschroeder, 985 S.W.2d 396, 398 (Mo. App. E.D. 1999) ).
Defendant first argues that Officer Beard lacked probable cause to initiate a traffic stop because Defendant did not improperly change lanes according to the language of Section 304.019.1, RSMo. (2000), requiring "appropriate" use of a turn signal. We need not reach this issue because we find that under the totality of circumstances here, the evidence supports a conclusion that Officer Beard had reasonable suspicion, justifying the traffic stop.
The Fourth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the Missouri Constitution, protect individuals from warrantless searches or seizures, except where a law enforcement officer has "reasonable suspicion" of criminal activity "based on specific and articulable facts." State v. Schroeder, 330 S.W.3d 468, 472 (Mo. banc 2011) (quoting Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ). While a traffic stop based on a violation of traffic laws is justified, such a traffic violation is not required: a traffic stop may be justified "based on erratic or unusual operation." State v. Pike, 162 S.W.3d 464, 473 (Mo. banc 2005) ; see also *554 State v. Barlow, 543 S.W.3d 102, 106-07 (Mo. App. W.D. 2018) (no traffic violation required; reasonable suspicion of intoxication can be based on observations of driver even before driving). Reasonable suspicion is a lesser standard than probable cause, and "[t]he quantity and quality of the information must be considered in the 'totality of the circumstances' to determine whether reasonable suspicion exists." Id. (quoting Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ).
Further, the Missouri Supreme Court has recognized that though the United States Supreme Court in Terry focused on an officer's reasonable suspicion of criminal activity, an officer's "community caretaking function" may require an investigation that could meet the threshold in Terry when reasonably carried out. Schroeder, 330 S.W.3d at 473 (citing Cady v. Dombrowski, 413 U.S, 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ). "Under the Fourth Amendment, a law enforcement officer may approach a vehicle for safety reasons, or if a motorist needs assistance, so long as the officer can point to reasonable, articulable facts upon which to base his actions." Schroeder, 330 S.W.3d at 473 (citing Terry, 392 U.S. at 21-22, 88 S.Ct. 1868 ).
Here, Officer Beard observed Defendant at 1:07 a.m. in the parking lot of a bar, which was the only business open at that time. While it is clear that Officer Beard's observation of someone in the parking lot of a bar is not sufficient to form reasonable suspicion by itself, the additional circumstances here justified Officer Beard's eventual stop of Defendant. Officer Beard saw Defendant vomit out the window of his vehicle. Officer Beard testified that in his experience, he believed "[i]t could be a possible intoxicated driver [or] somebody who needed medical attention." Seeing a person vomit out the driver's side window of a car gives an officer grounds to investigate whether that person needs medical attention under the officer's community caretaking function. Cf. State v. Desing, 378 Wis.2d 742, 905 N.W.2d 845 (Wis. Ct. App, 2017) (noting 911 call indicating reckless driver showing signs of being ill and possibly vomiting presented reasonably objective basis to be concerned for driver's health and safety, justifying stop). However, Officer Beard testified that Defendant drove away immediately after vomiting.
As Defendant drove out of the parking lot, he drove over a curb. Officer Beard testified, "That further raised my suspicion that there [was] either somebody in need of medical attention or a possible intoxicated driver." This constituted erratic or unusual operation of Defendant's vehicle that further contributed to a belief that Defendant either needed medical attention or was driving while intoxicated, which would have justified investigation. See Schroeder, 330 S.W.3d at 473 ; Pike, 162 S.W.3d at 473.
Moreover, Defendant then pulled up to a gas pump, did not exit his truck, and drove away as Officer Beard's patrol car went out of sight. Officer Beard testified Defendant "appeared to be trying to dodge law enforcement at that time." This action by Defendant further contributed to a reasonable suspicion of criminal activity under Terry, justifying Officer Beard's subsequent decision to conduct a traffic stop. Cf. U.S. v. Sharpe, 470 U.S. 675, 682 n.3, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (noting contributing factor to reasonable suspicion was group of drivers' use of evasive actions upon seeing law enforcement, including speeding as soon as officer began following them and quickly exiting highway). Though Defendant argues there are other possible reasons he would have failed to exit his vehicle to purchase gasoline, such as realizing he did not have his wallet, reasonable suspicion "need not rule out *555 the possibility of innocent conduct." Navarette v. California, 572 U.S. 393, 134 S.Ct. 1683, 1691, 188 L.Ed.2d 680 (2014) (quoting United States v. Arvizu, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) ).
Finally, while Defendant disputes Officer Beard's belief that Defendant made an improper lane change just prior to the stop, regardless of the propriety of the lane change, the totality of the other circumstances here of vomiting, striking a curb, and attempting to evade the officer, gave Officer Beard reasonable suspicion which justified his initial stop of Defendant. The trial court did not clearly err in denying Defendant's motion to suppress. Point denied.
Conclusion
We affirm the judgment of the trial court.
Kurt S. Odenwald, P. J., concurs.
Colleen Dolan, J., concurs.