

# Missouri Court of Appeals

### Southern District

#### Division Two

STATE OF MISSOURI, )
)
          Respondent, )
)
  vs. )      No. SD35364
)      Filed: March 5, 2019
CARL A. SELPH, )
)
          Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

Honorable Robert E. George, Associate Circuit Judge

## **AFFIRMED**

Carl A. Selph ("Selph") was convicted, after a jury trial, of four counts of the unclassified felony of statutory sodomy in the first degree, and the class B felony of child molestation. In two points on appeal, Selph asserts the trial court erred in allowing the State to examine the forensic interviewer regarding Victim's "tentative disclosure," and allowing testimony of a detective that Selph objected to as hearsay. Finding no merit to either point, we affirm the judgment of the trial court.

**Factual and Procedural Background**

Selph physically and sexually abused a child ("Victim") for several years. On July 10, 2013, a family member of Victim learned of a recent physical altercation between Victim and Selph. The family member asked Victim whether Selph had ever "touched her or done anything to her that he should not be doing." Victim responded, "Yes." Upon further questioning, Victim recounted some of the physical abuse, but did not disclose the sexual abuse. A hotline call was then made to the Division of Family Services. Victim underwent a forensic examination the next day. In the examination, Victim shared a few details about the sexual abuse—she stated that Selph was touching her in a sexual manner, and Selph was making her touch his genitals.

Selph was interviewed by police following Victim's forensic interview. Selph admitted that Victim had slept with him in his bed, and he did not feel sexually fulfilled due to a back injury and taking medication, which interfered with sexual relations with his wife. Selph also told police he was abusing his medication, it was a concern that things might have happened that he did not remember clearly because of the medication, he would have a "gut feeling" that he did something wrong, and admitted he told a family member he did not know what he did while on his medication. Selph indicated several times that Victim "[was] not lying" and that Victim "doesn't make these things up." Selph never denied the allegations of sexual abuse.

In March 2014, while visiting with the prosecutor, Victim disclosed additional details of sexual abuse at the hands of Selph. The prosecutor immediately scheduled Victim for a second forensic interview, where Victim disclosed more incidences of sexual abuse by Selph.

Selph was charged by second amended felony information with three counts of statutory sodomy in the first degree (Counts I, III, VII);[1] four counts of the class B felony of child

---

[1] *See* section 566.062 RSMo Cum.Supp. 2006.

molestation in the first degree (Counts II, V, VI, VIII);[2] and one count of felony statutory rape in the first degree (Count IV).[3]

A jury trial commenced on November 7, 2017. Among those testifying were Victim, forensic examiner Melinda Ingram ("Ingram"), and Detective Brian Landreth ("Detective Landreth"). Selph testified in his own defense.

Ingram testified that she had worked at the Lakes Area Child Advocacy Center ("CAC") in Branson since 2001, became its director in 2002, and a forensic interviewer in 2003. Ingram testified it was not unusual for a victim to not immediately report that they had been sexually touched or abused due to fear of not being believed, making someone mad or upset with them, or having been threatened. It was also not unusual for it to be days or even weeks before a victim disclosed sexual abuse. Ingram stated it was rare that a victim would "tell every single thing the first time[,]" that disclosure is a process, not an event—it tends to unfold over time. The following colloquy then took place:

> [PROSECUTOR]: In your training and experience does the phrase or words tentative disclosure have a particular meaning?
>
> [INGRAM]: Yes.
>
> [PROSECUTOR]: What is that?
>
> [INGRAM]: A tentative disclosure is - tentative means hesitant or reluctant at first, unsure at first. A tentative disclosure is when – in this context of a child, a child would be feeling like they want to tell, but they're not sure what the reaction of the adults around them, so they might kind of test the waters, as they say, and see - you know, tell just a little bit, see how the adults around them are - what the reaction will be. And either disclose more or withdraw, depending on - you know, if someone is very upset they might back up and withdraw their disclosure. If they see the world is going to continue on they might continue to let that unfold and disclose more.

---

[2] *See* section 558.011, RSMo Cum.Supp. 2003.

[3] *See* section 566.032, RSMo Cum.Supp. 2006.

[PROSECUTOR]: In the course of your employment have you met [Victim]?

[INGRAM]: I have.

. . . .

[PROSECUTOR]: Do you know when the first time you met with her was?

[INGRAM]: Yes.

[PROSECUTOR]: When was that?

[INGRAM]: July 11, 2013.

. . . .

[PROSECUTOR]: [D]id she make some type of disclosure?

[INGRAM]: Yes.

[PROSECUTOR]: And, generally, what was that disclosure?

[INGRAM]: The first time I met her she disclosed that [Selph] made her touch his . . . private area. I think we used the word private area in our interview. On multiple occasions. And that he would touch her breasts on top of her clothing. And that was the gist of the initial disclosure.

[PROSECUTOR]: Would there have been anything that you observed based on your experience that you would have taken that disclosure to be in the nature of a tentative disclosure?

[INGRAM]: I did. I did.

[PROSECUTOR]: And why?

[SELPH'S COUNSEL]: Your Honor, may we approach?

BY THE COURT]: Yes.

(BENCH CONFERENCE HELD)

[SELPH'S COUNSEL]: Your Honor, he is now asking her to take her general knowledge as an expert and apply it directly to her interview with [Victim]. I would argue under State v. Rogers, which was decided by the Missouri Appellate Court, Eastern District, on September 26, 2017,

4

experts in child sex cases may give general testimony about behavior and characteristics seen in child sex abuse victims, but cannot give particularized testimony about a specific victim's credibility. By implying her generalized knowledge of what a tentative disclosure is directly to [Victim] she is being asked to give particularized testimony, and that goes to credibility - the specific victim's credibility, and that is a determination for the Jury, not for the CAC expert.

[PROSECUTOR]: I don't think that's what she's doing, Judge. Now, I'm not familiar with that case. Most of those types of cases that are talking about generalized characteristics that they - they're talking about things like grades in school, or acting out, or something along those lines. Again, I'm not familiar with that case. That's not what I'm asking her about. I'm asking her about specific things that she observed in this interview about the way the child talked and the way she said it. If there's anything that she's an expert on, you know, it would be that. But I don't even know that I'm even asking her to give expert testimony. I'm asking her what she observed.

. . . .

BY THE COURT: The objection is that she's testifying about specific -

[SELPH'S COUNSEL]: She's now taking her general knowledge and she's applying it directly to this interview, which is a particularized - basically it's particularized testimony. He asked her would you say this is a tentative disclosure, based upon what she had already said about it being general disclosure, and now she answers that, yeah, she feels this is a tentative disclosure. I say that's particularized testimony, and, therefore, it's not allowed.

BY THE COURT: Well, she's testified that it goes in stages. She went from general rapport building to tentative. I didn't catch the third stage. And then finally to the closure statement. I think is what she said. She mentioned it transfers to a different stage. And she's talking about going from one stage to the other.

[SELPH'S COUNSEL]: This wasn't a stage. That's not how I heard it. This was a type of disclosure.

[PROSECUTOR]: I would agree with [defense counsel]. That's not what she's talking about. She's not talking about how her interview went from one stage to the other. She had described basically in her training and experience what a tentative disclosure is. And then I asked her in this interview if she observed - something along the lines did she observe

5

anything that she, based on her training and experience, would consider a tentative type of disclosure. That's about what I said.

[SELPH'S COUNSEL]: And I believe that calls for particularized testimony, and that she cannot testify as to that based upon this decision State v. Rogers.

BY THE COURT: Let's see if we can pull it up. Hopefully I can get it to pull up. Let's take a break.

. . . .

BY THE COURT: We're back on the record outside the hearing of the Jury. The Jury is still outside the courtroom. And there was an objection to the testimony that was being given by the witness, Ms. Ingram. So that we all hear a little better, would you state again the nature of the objection, [defense counsel]?

[SELPH'S COUNSEL]: Yes, Your Honor. My objection is she's been allowed to testify generally as to her expertise and training, but she is now being asked to take that general knowledge and apply it to particularized testimony, specific things that the child said, and applying the expert knowledge to it, like to give it - well, for lack of a better word, an indicia of reliability, that is not her province to go it. It is for the Jury to determine whether or not a tentative disclosure was made, not for them to be - not for the credibility of that disclosure to be reinforced by this expert. . . . And that is under State v. Rogers, which is Eastern District 104.928, filed on September 26, 2017.

[PROSECUTOR]: Judge, a couple of things. I mean, like one thing that the Court specifically pointed out was excessive inquiry, but I guess kind of as I'm still trying to study this a little bit, is that I think there was general testimony given maybe about indicators of reliability, and then the Prosecutor came back and asked like specific questions like - for example, it says what about idiosyncratic details, did you hear any of those in this interview. She said yes. Can you tell me about that. The interviewer gives a couple of examples. And then every one of those would be followed up by the Prosecutor by saying is that an indicator of reliability, or that is an indicator of reliability, correct. And then, like another example, it says, now, you also talked about statements against a child interest. Did you hear any of that in this interview. Yes. Tell me about some of those. And she gives a couple of examples. I say she. The interviewer gives a couple of examples. And then the next question is, so those would all be consistent with indicators of reliability. And after, you know, - and at some point in here they pointed out that those phrases were used like over twenty times. So what I'm not sure about from this opinion, without being able to look at

6

it a little closer, and maybe not even after looking at it closer, but is whether - is if the question did you observe a statement against interest. And to me that's just a matter of looking at what's on that screen and saying that's an indicator. And I don't see the harm in that. But then when you put the person, this witness, in the position to say, basically, and that makes this person credible, or that makes this person reliable, I don't know, I'm kind of thinking that's where the problem is. Because, I mean, that would definitely seem like a problem to me. I would not ask that. I think that's something I can say in argument, but - and at this point of where we are that's what I had asked. I had asked did you, you know, observe anything that appeared to be a tentative disclosure. And then you put that kind of together with - I think I may have said this on the record a little bit ago, that the Defense is, you know, clearly going to the saying that this child's story kept changing and getting bigger. I mean, that's the whole reason I'm going into this line of inquiry. So I guess the - I guess my question would be is asking for an example of a tentative disclosure - I'm kind of failing to see what's wrong with that question in and of itself, but -

BY THE COURT: I don't see a problem with asking is that - is that an example of a tentative disclosure. Because that's not asking that this witness comment on the credibility of a witness at that point. What I was reading in this opinion is that they went beyond the general testimony and they talked about the tentative disclosure, and then they asked for specific - and they did ask a number of questions, that starts on page 9 of the opinion, and goes through page 13, I think, was the last page I saw. Actually goes to page 14. The Prosecutor continuously says and you saw these indicators of reliability, or kept referring back to those. Right now I think she's talking about what was - I thought the question was about a tentative disclosure.

[SELPH'S COUNSEL]: Yes. He was asking do you consider this a tentative disclosure.

BY THE COURT: Right. Well, and she may or may not. I don't see how that invades the province of the Jury if she observes something during the interview that she's done in the past. And on this specific interview she asked was there a disclosure, was there a tentative disclosure. Now, I don't remember him asking anything about the reliability, reliability, in that section. Understand the nature of your objection if he starts going into and saying, well, does that mean that her statement was true, or does that mean it's reliable, her statement is reliable. He's still in the exploratory area. But, anyway, I'm going to overrule the objection at this time because I think he's still in the general testimony area, and let you - if you want to rephrase the question or you want to redirect your witness, and if you want to go over that with her before we bring the Jury back in, . . ., so that you can keep the witness within a narrow, safe - as long as Ms. Ingram understands where you're going so we don't get into that area.

7

Ingram continued her testimony, stating that in her second interview with Victim, approximately eight months later, Victim disclosed additional sexual abuse by Selph. Ingram stated this was a good example of the disclosure process, that it is a process not an event, and victims tend to be more tentative about more traumatic things or things they are afraid will disrupt the things around them. Ingram stated it is not her role to determine whether a victim is lying.

Detective Landreth testified he was a 20-year veteran in law enforcement, with six years at the Stone County Sheriff's Office investigating crimes against children. He testified he interviewed Selph following Victim's first forensic interview. Detective Landreth indicated that Selph said he was on medication due to a back surgery. Detective Landreth questioned Selph about some of the specific allegations Victim made that Selph inappropriately touched her and grabbed her hand to touch his genitals. Selph stated he had no recollection of the incidences, and that he had concerns the incidences might have happened but he could not remember due to the medications he was taking.

The prosecutor asked Detective Landreth—based on his interview—if he knew whether Selph had talked to any of his family about Victim's allegations. Detective Landreth replied, "Yes[,]" and the following colloquy took place:

> [PROSECUTOR]: And had you heard something about that?
>
> [LANDRETH]: Yes. I was told -
>
> [SELPH'S COUNSEL]: Your Honor, may we approach? Well, objection. Hearsay.
>
> BY THE COURT: Sustained. You want to approach?
>
> [PROSECUTOR]: I better approach.
>
> BY THE COURT:    Okay.

8

(Bench Conference Held.)

[PROSECUTOR]: I'm not offering it for truth of the matter, Judge. I'm offering it for him to explain what he did next and why he asked a question.

BY THE COURT: Any response to that?

[SELPH'S COUNSEL]: Your Honor, I still think it's hearsay. We don't know who it's coming from and I don't even believe, if it's what I'm thinking, that it's even first-person hearsay. It's like, somebody told somebody this, and they told the officer. I still think it's hearsay.

BY THE COURT: If it's a part of his investigation that he was doing, if he can identify from whom. Does he know who he got the statement from?

[PROSECUTOR]: I don't know. I don't know if he can or not. But Judge, I think it's like he's interviewing a guy and he says, I've heard this, and he could even have made it up. He could still ask the question. We'll see what his response would be.

BY THE COURT: That's true. If it's a ruse-type situation, -

[SELPH'S COUNSEL]: I'm still going to object.

BY THE COURT: With that in mind, the objection is overruled.

Detective Landreth testified he was told that when Selph was confronted by a family member with Victim's allegations, Selph told the family member he did not know what he did while on his medication. Selph also never denied Victim's allegations. When Detective Landreth asked Selph if this statement was true, Selph responded, "[T]hat's true, that's what I told him, and it's true that's what happened."

The jury found Selph guilty of first-degree statutory sodomy (Count I); first-degree child molestation (Count II); first-degree statutory sodomy (Count III), first-degree statutory sodomy (Count VII); and first-degree statutory sodomy (Count VIII). Selph was found not guilty on Counts V and VI, the two remaining child molestation charges. As to Count IV (statutory rape),

the jury could not reach a unanimous decision. After some discussion, the parties agreed a mistrial on Count IV would be appropriate in lieu of a "Hammer instruction." The trial court then "declare[d] a mistrial on the other verdict[.]"[4]

On December 1, 2017, Selph filed a "Motion for Acquittal or in the Alternative for a New Trial" asserting, in relevant part, that the trial court erred in allowing Ingram to testify as to her opinion that Victim's first forensic examination was a "tentative disclosure," and overruling his objection to Detective Landreth's hearsay testimony regarding statements Selph made to a family member.

On January 29, 2018, the court overruled Selph's motion, and sentenced Selph to thirty years in prison. This appeal followed.

In two points on appeal, Selph asserts the trial court abused its discretion in overruling Selph's objection to the State questioning Ingram on whether Victim's disclosure of sexual abuse in her initial forensic examination was a "tentative disclosure," and in overruling Selph's objection to the State questioning Detective Landreth regarding hearsay statements Selph made to a family member.

**Standard of Review**

"We review trial court decisions regarding the admission or exclusion of evidence for abuse of discretion." *State v. Cross*, 421 S.W.3d 515, 518 (Mo.App. S.D. 2013). The trial court is presumed to know and apply the law—however, this does not mean that *de novo* review of the evidentiary legal question subsumes our entire evaluation. The abuse-of-discretion standard accounts for the fact that the trial court must make numerous, and usually on-the-spot evidentiary rulings in any given trial, and is vested with the discretion to do so. Thus, "if reasonable persons

---

[4] At sentencing, by agreement, the State dismissed Count IV.

10

may differ as to the propriety of an action taken by the trial court, then it cannot be held that the trial court has abused its discretion." **State ex rel. Wyeth v. Grady**, 262 S.W.3d 216, 219 (Mo. banc 2008). However, the trial court is said to abuse that discretion when its ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."[5] **Id.**

To succeed on appeal, an appellant must also show that the trial court's abuse of discretion was "so prejudicial that it deprived the defendant of a fair trial." **State v. Culpepper**, 505 S.W.3d 819, 828 (Mo.App. S.D. 2016) (internal quotation and citation omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." **Id.** (internal quotation and citation omitted). We evaluate prejudice based on the whole record. **State v. Olten**, 428 S.W.3d 784, 788 (Mo.App. S.D. 2014).

### Analysis

### *Point I: "Tentative Disclosure" Testimony*

In his first point, Selph argues that the trial court abused its discretion in overruling defense counsel's objection to the State's examination of Ingram about whether Victim made a "tentative

---

[5] Neither this distinction, nor the inherent rationale on which it rests, are recent innovations. As was well expressed in *Sinclair v. Narragansett Lead & Zinc Co.*, 87 Mo.App. 268, 272–73 (1901):

> When an appellate tribunal exercises revisory power over the discretion of a trial court it must necessarily recognize some liberty of action, within the bounds of reason, by the trial court. Otherwise, there would be no difference in the rulings of trial courts in maters [sic] conceded to be within their discretion and maters [sic] depending upon fixed rules and defined principles of law. In other words, the phrase, 'in the court's discretion,' would have no meaning.
>
> . . . .
>
> Judicial discretion is a phrase of great latitude; but it never means the arbitrary will of the judge. To act from the promptings of *arbitrary will* is to be governed by mere whim and without reason, and the act is an abuse of discretion. So if a judge, in passing on matters in his discretion, does that which is clearly unreasonable, he has committed an abuse of discretion. It has, therefore, been ruled that to make out an abuse of discretion the action must have been taken on grounds, or for reasons clearly untenable, or to an extent clearly unreasonable.

**Id.** (internal quotations and citations omitted).

11

disclosure." Selph argues that this testimony "was more prejudicial than probative, and was improperly used to bolster [Victim's] credibility."

At trial, Ingram testified (based on her training and experience) about the general process of disclosure, including delayed and tentative disclosures, whether it is common for there to be signs of physical injury after a child has disclosed penetration, and the protocols that are followed during forensic interviews. She did not comment on Victim's credibility—rather, she explicitly said that her job was not to determine whether a child is telling the truth, and had no way of knowing that.

The State's brief directs us to **State v. Churchill**, 98 S.W.3d 536, 539 (Mo. banc 2003), wherein the Supreme Court indicated as follows:

> In cases involving the sexual abuse of a child, there are typically two types of expert testimony that give rise to a challenge: general and particularized. General testimony describes a generalization of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse. **Particularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused**. The trial court has broad discretion in admitting general testimony, but when particularized testimony is offered, it **must** be **rejected** because it usurps the decision-making function of the jury and, therefore, is inadmissible.

*Id*. (emphasis added).

Ingram's testimony was general, not particularized. Therefore, the trial court had the discretion to admit her testimony, and Selph fails to demonstrate any abuse of that discretion. Prior to ruling, the trial court examined the law and heard considerable arguments by the attorneys. Because Selph fails to demonstrate that the trial court abused its discretion in admitting Selph's testimony, Point I is denied.

12

## *Point II: Alleged Hearsay*

In his second point, Selph argues that the trial court abused its discretion in overruling defense counsel's objection to the testimony of Detective Landreth "that he learned from a 'family member' that [Selph] said he did not know what he does when he is on medication[.]" Selph suggests that this testimony violated Selph's "right to confrontation" and was hearsay.

During the State's case in chief, the prosecutor asked Detective Landreth what he heard from one of Selph's family members. Selph objected on hearsay grounds, and the objection was initially sustained.

The prosecutor then explained, "I'm not offering it for truth of the matter, Judge. I'm offering it for him to explain what he did next and why he asked a question." The prosecutor further argued: "But Judge, I think it's like he's interviewing a guy and he says, I've heard this, and he could even have made it up. He could still ask the question. We'll see what his response would be."

The following colloquy then occurred:

> BY THE COURT: That's true. If it's a ruse-type situation, -
>
> [SELPH'S COUNSEL]: I'm still going to object.
>
> BY THE COURT: With that in mind, the objection is overruled.

Detective Landreth testified he was told that when Selph was confronted by a family member with Victim's allegations, Selph told the family member he did not know what he did while on his medication. Selph also never denied Victim's allegations. When Detective Landreth asked Selph if this statement was true, Selph responded, "[T]hat's true, that's what I told him, and it's true that's what happened."

"Hearsay is an out-of-court statement offered for the truth of the matter asserted." ***State v. McFadden***, 391 S.W.3d 408, 431 (Mo. banc 2013). Here, the evidence was not offered for the truth of the matter asserted. The prosecutor expressly stated that: (1) the evidence was not being offered for the truth of the matter asserted; and (2) the evidence was being offered to explain Detective Landreth's subsequent conduct in having Selph confirm or deny the family member's statement. "Testimony containing out-of-court statements that is presented to explain subsequent conduct is not offered for the truth of the matter asserted and is not hearsay." ***State v. Gordon***, 551 S.W.3d 678, 684 (Mo.App. W.D. 2018). Because "the statement was not hearsay, [Selph's] right to confront the witnesses against him is not implicated[.]" ***Id.*** at 685 n.6 (internal quotation and citation omitted).

Selph fails to demonstrate that the trial court abused its discretion in overruling his objection to Detective Landreth's testimony. Point II is denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

DANIEL E. SCOTT, J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS