

# Missouri Court of Appeals
## Southern District
### Division Two

STATE OF MISSOURI, )
)
Plaintiff-Respondent, )
)
v. ) No. SD35759
) Filed: May 1, 2020
JUSTIN KEITH LONG, )
)
Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Larry G. Luna, Senior Judge

**AFFIRMED**

Following a bench trial, Justin Long (Defendant) was convicted of the class B misdemeanor of driving while intoxicated (DWI). *See* § 577.010.[1] Prior to trial, Defendant filed motions in limine and to suppress evidence and statements. Defense counsel was permitted to make continuing objections at trial, which were taken with the case. Ultimately, the trial court denied the motions in limine, overruled the objections and admitted the challenged evidence and statements.

---

[1] All statutory references are to RSMo (2016).

Presenting five points on appeal, Defendant contends the trial court erred by failing to suppress evidence and statements because: (1) the arresting officer had "no reasonable suspicion to detain" Defendant; (2) the arresting officer had "no reasonable suspicion to extend his nonconsensual detention" of Defendant; (3) there was "no probable cause to arrest" Defendant; (4) the Horizontal Gaze Nystagmus (HGN) test "should not have [been] admitted" because "the test was not performed properly"; and (5) the Portable Breath Test (PBT) "should not have [been] considered" because "law enforcement had wrongly assured [Defendant] the PBT would not be used against him[.]" Finding no merit in any of these points, we affirm.

**Factual and Procedural Background**

In reviewing the trial court's ruling on a motion to suppress, "[t]his Court defers to the trial court's factual findings and credibility determinations and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). The following summary of facts has been prepared in accordance with these principles.

Around 2:40 a.m. on February 10, 2017, Ozark Police Officer Trevor Spencer was parked in his patrol vehicle on the shoulder of the on-ramp to 65 Highway. Officer Spencer saw an Acura SUV drive past him, park on the shoulder of the road, and turn on its emergency flashers. Two passengers exited the passenger side of the vehicle and began walking towards his patrol vehicle. Officer Spencer then activated his emergency lights and contacted the two passengers, later identified as Jeremy Rice (Rice) and Angel Fulton (Fulton), as they were walking toward his patrol vehicle. As the officer was exiting his vehicle, he heard Fulton tell Rice to get back into the vehicle, saying: "We're both drunk,

2

and we want to go home." Officer Spencer instructed the two passengers to re-enter the vehicle. The officer was concerned for everyone's safety at the side of the road and about the possibility of an escalating domestic situation. After both were in the vehicle, Officer Spencer then contacted the driver, whom he identified as Defendant.

When the officer asked Defendant why the passengers had exited the vehicle, Defendant said they had been in an argument and that they had been at Wise Guys, a local bar. Officer Spencer observed: (1) an immediate smell of intoxicants on Defendant's breath; (2) Defendant's eyes were glassy and bloodshot; and (3) Defendant's "speech was a little bit slurred." Defendant said that he was "the most sober" and planned to bring everyone home. When asked if he had consumed any alcoholic beverages, Defendant said he had consumed three or four drinks of Crown Royal. At this point, Officer Spencer thought Defendant might be impaired. Officer Spencer asked Defendant if he believed that he was impaired. Defendant said he believed that he was over the legal limit. Officer Spencer asked Defendant to take a PBT, but Defendant asked if he could take a field sobriety test instead. As Defendant exited his vehicle, Officer Spencer observed Defendant sway back and forth.

Officer Spencer then conducted three field sobriety tests on Defendant. First, Officer Spencer performed the HGN test. Defendant exhibited all six clues of impairment, indicating intoxication. Defendant even exhibited what was referred to as vertical gaze nystagmus, which, according to Officer Spencer, indicated a high level of intoxication. Next, Defendant performed the walk-and-turn test. He showed one indicator of intoxication out of a possible nine by using his arms for balance. Third, Defendant performed the one-leg-stand test. He showed one indicator of intoxication out of a possible four by similarly using his arms for balance.

3

Officer Spencer again asked Defendant to submit to the PBT, and this time Defendant complied. The PBT was positive for the presence of alcohol. Defendant asked what he blew, and the officer responded that it was a .197. Based on the "totality of the whole entire event[,]" Officer Spencer believed that Defendant was operating a motor vehicle in an intoxicated condition and placed him under arrest. Officer Spencer then transported Defendant to the Ozark Police Department. As Defendant exited the vehicle, Defendant stumbled and almost fell out of the patrol car. Apparently referring to the PBT result, Defendant said, "I guess I am a one nine."

Once at the station, Officer Spencer read Defendant his Miranda warning and an implied-consent statement. Officer Spencer then completed the AIR interview with Defendant. During that interview, Defendant agreed that he was operating a vehicle when he stopped his vehicle in front of the patrol car, and that he had been drinking. He said he had "four shots in about an hour" and was under the influence of an alcoholic beverage. Defendant blew into the breathalyzer machine, which yielded a blood-alcohol content of .139.

Defendant was charged with DWI. Prior to trial, Defendant filed motions to suppress all evidence and statements obtained after an "unlawful detention" or arrest with "no probable cause" in violation of his constitutional rights to be free from unreasonable search and seizures under, *inter alia*, the Fourth Amendment of the United States Constitution. The motions were taken with the case, and defense counsel was permitted to make continuing objections at trial. Officer Spencer testified to the aforementioned facts at trial. Exhibits included the dash cam video, which confirmed much of Officer Spencer's testimony. Exhibits also included the blood-alcohol test report, which was admitted to show

Defendant's blood-alcohol level was above the legal limit. Testimony concerning the result of the PBT was admitted to establish probable cause to arrest Defendant. Thereafter, the court: (1) denied the motions in limine and objections at trial; (2) admitted the challenged testimony and evidence; and (3) found Defendant guilty of DWI. This appeal followed. Additional facts will be included below as we address Defendant's five points on appeal.

## Standard of Review

We review the denial of a motion to suppress to determine whether there was substantial evidence to support the decision, and we will only reverse where the trial court's ruling is clearly erroneous. *State v. Gaw*, 285 S.W.3d 318, 319-20 (Mo. banc 2009); *State v. Johnson*, 427 S.W.3d 867, 871 (Mo. App. 2014). A ruling is clearly erroneous when we are left with a definite and firm impression that a mistake has been made. *Johnson*, 427 S.W.3d at 871. "Whether conduct violates the Fourth Amendment is a question of law, which we review *de novo*." *Id*. at 871-72; *see Lammers*, 479 S.W.3d at 630; *State v. Bruce*, 503 S.W.3d 354, 357 (Mo. App. 2016).

In reviewing an appellant's claim that the trial court erred in admitting evidence, our review is for abuse of discretion. *State v. Winfrey*, 337 S.W.3d 1, 5 (Mo. banc 2011). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id*. (citation omitted); *see State v. Smith*, 330 S.W.3d 548, 553 (Mo. App. 2010).

## Discussion and Decision

### Point 1 – Consensual Encounter

Defendant's first point contends the trial court clearly erred "in denying [his] motions in limine and to suppress evidence and statements because Officer Spencer had no

5

reasonable suspicion to detain [Defendant.]"[2]  According to Defendant, the officer "had no reason to believe [Defendant] or any other person had committed a crime and said encounter was not a consensual one."  We disagree.

Generally, there are three categories of police-citizen encounters:  (1) a consensual encounter; (2) an investigative detention requiring only reasonable suspicion based upon specific articulable facts; and (3) an arrest requiring probable cause.  *See Johnson*, 427 S.W.3d at 872.  "A consensual encounter does not implicate the Fourth Amendment until the officer restrains the individual's liberty to the extent that a reasonable person would feel that he or she was not free to leave or decline the officer's questions."  *Id*.  If the encounter is consensual, "police officers are free to question an individual, even without reasonable suspicion of criminal activity[.]"  *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007); *see also Lammers*, 479 S.W.3d at 631 ("for purposes of the Fourth Amendment, a seizure does not occur simply because a police officer approaches an individual and asks a few questions").  Further, "[u]nder the Fourth Amendment, a law enforcement officer may approach a vehicle for safety reasons, or if a motorist needs assistance, so long as the officer can point to reasonable, articulable facts upon which to base his actions."  *State v. Schroeder*, 330 S.W.3d 468, 473 (Mo. banc 2011); *see State v. Galen*, 554 S.W.3d 550, 554 (Mo. App.

---

[2]  We note that in each of Defendant's points, he challenges only the court's ruling denying his motions to suppress.  Generally, "a point relied on attacking the trial court's ruling on a pretrial motion to suppress, without attacking the court's ruling admitting the evidence, is deficient in that it does not identify the actual ruling that is subject to challenge and, therefore, does not preserve the issue for appellate review."  *State v. Wolf*, 91 S.W.3d 636, 642 (Mo. App. 2002); *see State v. Lloyd*, 205 S.W.3d 893, 900 (Mo. App. 2006) (a trial objection to the admission of evidence challenged in a motion to suppress is required to preserve the issue for appellate review).  Here, because the motions in limine were taken with the case and defense counsel was permitted to make continuing objections at trial, we consider issues related to the admission of the challenged evidence at trial preserved.

2018). "Motorists typically require assistance while stranded on the roadside at night." *Schroeder*, 330 S.W.3d at 473. The encounter remains consensual, however, "only as long as a reasonable individual would feel free to leave and end the conversation." *Johnson*, 427 S.W.3d at 872; *cf. State v. Rowe*, 67 S.W.3d 649, 655-56 (Mo. App. 2002) (there is no requirement under the law that an officer must tell a citizen whom they encounter that they are free to leave). "If a reasonable person would feel free to disregard the police and go about their business, the encounter is consensual and the Fourth Amendment is not triggered." *Lammers*, 479 S.W.3d at 631; *see Johnson*, 427 S.W.3d at 872.

Here, the initial contact between Officer Spencer and Defendant was a consensual encounter. It was Defendant who pulled over, parked the Acura and turned on his emergency flashers – all in front the patrol car, suggesting that he and/or the passengers might possibly need help. *See, e.g.*, *Schroeder*, 330 S.W.3d at 473. Officer Spencer testified that a male and female then exited the Acura from the passenger side and began walking towards his patrol vehicle. Concerned by this unusual occurrence, Officer Spencer then activated his emergency lights and exited his patrol vehicle to contact the two passengers and see if they needed help. As Officer Spencer exited his vehicle he heard the female tell the male to get back into the car and that they were both drunk. Officer Spencer directed the passengers back into the Acura for safety reasons. He then approached Defendant to inquire why his passengers exited the car and approached his patrol vehicle at 2:40 a.m. Officer Spencer was free to question Defendant about these unusual events. *See Schroeder*, 330 S.W.3d at 473; *see also Lammers*, 479 S.W.3d at 631; *Johnson*, 427 S.W.3d at 872. Therefore, the officer's initial encounter with Defendant was consensual. *See Schroeder*, 330 S.W.3d at 473; *Galen*, 554 S.W.3d at 554; *Johnson*, 427 S.W.3d at 872. Point 1 is denied.

7

*Point 2 – Reasonable Suspicion of Criminal Activity*

Defendant's second point contends the trial court clearly erred in failing to suppress evidence and statements because Officer Spencer had "no reasonable suspicion to extend his nonconsensual detention" of Defendant. According to Defendant, the officer "had effected his initial purpose of the detention and he failed to inform [Defendant] he was free to leave." We find no merit in this argument.

Reasonable suspicion, which is a less stringent standard than probable cause, is present when "a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *State v. Lovelady*, 432 S.W.3d 187, 191 (Mo. banc 2014) (citations omitted). "Suspicion is reasonable if the officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id*. (citation omitted); *see, e.g.*, *State v. Peery*, 303 S.W.3d 150, 154-55 (Mo. App. 2010) (officer has reasonable suspicion to conduct a detention when he can point to specific facts and inferences which establish an objective basis for suspecting illegal activity).

This case is similar to *State v. Marr*, 499 S.W.3d 367 (Mo. App. 2016). In *Marr*, a police officer received a dispatch that there was a stranded motorist. The officer located the vehicle reported as stranded, activated his emergency lights for safety reasons, and approached the occupants of the vehicle to inquire if there was a problem and to provide help if needed. *Id*. At 370. As the officer approached the vehicle, he observed the driver reaching down as if to hide something. For safety reasons, the officer then approached the passenger side of the vehicle, where he encountered the defendant. *Id*. The officer immediately noticed that the defendant appeared to be under the influence of what he

believed to be methamphetamine: she was nervous and fidgety, her pupils were dilated, her cheeks were sunken, and she had sores on her hands and face. *Id*. The officer asked the defendant for identification, at which point she provided her Missouri Department of Corrections identification and informed the officer that she was currently on probation. *Id*. at 370-71. At this point, the officer decided to investigate further. He collected both the defendant's and driver's identification, ran both through dispatch, and soon thereafter deployed a drug dog, which alerted to the passenger side door. The vehicle was searched and methamphetamine was found in the passenger seat. The defendant was charged and convicted of first-degree trafficking. *Id*. at 370.

On appeal, the defendant in *Marr* argued that once the officer determined that the defendant and driver were not in need of assistance, his "initial investigation in response to the stranded motorist dispatch was completed and every action taken thereafter constituted an impermissible extension of the original investigation in violation of the Fourth Amendment." *Id*. at 373. The western district of this Court disagreed. The Court noted that the initial contact between the officer and the defendant was a consensual encounter. *Id*. The encounter became a detention when the officer "developed reasonable suspicion almost immediately upon his encounter with [the defendant]." *Id*. at 374. By the time the officer asked the defendant to step out of the car, he had observed "sufficient articulable facts at that point to constitute reasonable suspicion to believe that [the defendant] was engaged in criminal activity." *Id*.

We reach the same conclusion here. Officer Spencer's consensual encounter with Defendant quickly turned into a reasonable suspicion of criminal activity. *See id*. Officer Spencer testified that Defendant told him that they had all been at a local bar, the passengers

9

had gotten into an argument, and that he was "the most sober" person in their group. While speaking with Defendant, the officer immediately smelled the odor of alcohol on Defendant's breath, and observed Defendant's eyes were watery, bloodshot and glassy, and his speech was slurred. When Officer Spencer asked Defendant if he had been drinking, Defendant replied that he had had three to four alcoholic beverages that night. Based on these observations of Defendant during this initial encounter, Officer Spencer developed concerns that Defendant was driving under the influence of alcohol. It was only after these initial observations that Officer Spencer obtained Defendant's identification to run through dispatch and proceeded to conduct a further investigation. *See id*. Thus, the consensual encounter between Officer Spencer and Defendant quickly turned into a detention only after Officer Spencer made sufficient observations to generate reasonable suspicion of criminal activity, *i.e.*, that Defendant was driving while intoxicated. Accordingly, Point 2 is denied.[3]

*Point 3 – Probable Cause to Arrest*

Defendant's third point contends the trial court clearly erred in failing to suppress evidence and statements because "there was no probable cause to arrest" Defendant. He maintains "there was insufficient evidence as a matter of law to believe that [Defendant] had committed any crime." We disagree.

"Probable cause requires more than a mere suspicion of intoxication, but less than absolute certainty." **Smith v. Dir. of Revenue**, 594 S.W.3d 282, 284 (Mo. App. 2020). "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has

---

[3] Regardless of whether or not Officer Spencer had developed a reasonable suspicion of criminal activity, he was not required to tell Defendant that he was free to leave. *See* **Rowe**, 67 S.W.3d at 655-56.

10

committed an offense[.]" ***White v. Dir. of Revenue***, 321 S.W.3d 298, 312 (Mo. banc 2010) (citation omitted); ***Ridgway v. Dir. of Revenue***, 573 S.W.3d 129, 133 (Mo. App. 2019). Missouri courts have found a combination of observations indicating intoxication to be sufficient for a finding of probable cause. ***Rain v. Dir. of Revenue***, 46 S.W.3d 584, 588-89 (Mo. App. 2001). Even absent field sobriety tests or a PBT, "probable cause is proven using other indicators of intoxication such as: an odor of alcohol, behaviors, mannerisms, and physical expressions." ***Smith***, 594 S.W.3d at 284-85; *see* ***Rain***, 46 S.W.3d at 587-89.

Here, the evidence was sufficient to support a finding of probable cause. Officer Spencer testified that, after Defendant said he came from a local bar and was "the most sober" person in their group, the officer observed: (1) an immediate odor of alcohol on Defendant's breath; (2) his eyes were watery, bloodshot and glassy; (3) his speech was slurred; (4) when asked if he had been drinking, Defendant replied that he had had three to four alcoholic beverages that night; and (5) Defendant swayed back and forth as he exited his vehicle. *See, e.g.*, ***Smith***, 594 S.W.3d at 284-85 (similar testimony by arresting officer "sufficient in itself to support a finding of probable cause"); *see also* ***Rain***, 46 S.W.3d at 588.

In addition, field sobriety tests indicated that Defendant was intoxicated. Officer Spencer observed Defendant exhibit six out of six clues during the HGN test, indicating intoxication. Defendant even exhibited what was referred to as vertical gaze nystagmus, which, according to Officer Spencer, indicated a high level of intoxication. *See* ***State v. Rose***, 86 S.W.3d 90, 97 (Mo. App. 2002) ("HGN evidence is admissible as a reliable measure of an illegal level of intoxication"); ***State v. Stone***, 280 S.W.3d 111, 116-17 (Mo. App. 2009). Further, during both the walk-and-turn and one-leg-stand tests, Officer Spencer

11

noticed Defendant improperly used his arms for balance. Moreover, Defendant admitted to Officer Spencer that he had been drinking whiskey that night, admitted that he was likely over the legal limit, and a PBT was positive for alcohol. Based on the totality of these circumstances, Officer Spencer had a reasonable belief that Defendant operated a vehicle while intoxicated, and thus had probable cause to arrest Defendant. *See, e.g.*, **Ridgway**, 573 S.W.3d at 134 (probable cause supported by evidence that the defendant "smelled strongly of alcohol; had bloodshot, watery, glassy eyes; exhibited swaying and uncertain balance; was mumbling and slurring his words; admitted to consuming three drinks; and failed both field sobriety tests conducted by consent, the [HGN] test and [PBT]"). Accordingly, Point 3 is denied.

*Point 4 – HGN Test*

Defendant's fourth point challenges the admissibility of the HGN test. The following facts are relevant to this point.

With respect to the HGN test, Officer Spencer provided the following testimony: (1) he received the required eight hours of training to perform the HGN test; (2) he explained how to perform the test; (3) he detailed how he performed the test on Defendant; and (4) as a result, he clearly observed horizontal gaze nystagmus in both of Defendant's eyes, as well as vertical nystagmus, indicating a high level of intoxication. Defense counsel did not offer any HGN standards or guidelines in evidence. The court admitted Officer Spencer's testimony about the results of the HGN test over objection, and defense counsel rigorously cross-examined Officer Spencer about any deviations from the procedures that he testified he followed.

12

On appeal, Defendant argues that the trial court "should not have admitted … the results of the [HGN] test in that it was not performed properly" in accord with "the Department of Health regulations and standards and Officer Spencer's training." We disagree.

In *State v. Tice*, 550 S.W.3d 558 (Mo. App. 2018), this Court rejected a similar argument. There, the defendant argued "the results of the HGN test were inadmissible because [the officer] failed to follow the National Highway Traffic Safety Administration (NHTSA) manual while administering the HGN test." *Id*. at 561. After reviewing the officer's testimony, we held that an adequate foundation to admit the test had been laid based upon *Rose*, 86 S.W.3d at 98-99 (setting out the requisite steps involved in the proper administration of an HGN test). *Tice*, 550 S.W.3d at 564; *State v. Burks*, 373 S.W.3d 1, 6-7 (Mo. App. 2012). We also noted that, while defense counsel claimed the NHTSA guidelines were not followed, no evidence to that effect was presented. *Tice*, 550 S.W.3d at 564. We upheld the trial court's ruling that the HGN test results were admissible, and that the issues raised by defense counsel went to the weight of the evidence. *Id*. at 562 n.4.

We reach the same conclusion here. Officer Spencer testified that he had received the requisite eight hours of training. During his testimony, he also explained in detail how he administered the HGN test to Defendant and the observations that were made during each phase of the test. As in *Tice*, this testimony was sufficient to show an adequate foundation to admit the HGN test in this case. *Id*. at 564; *see Burks*, 373 S.W.3d at 6-7; *Rose*, 86 S.W.3d at 98-99. Because "the Department of Health regulations and standards" were not admitted in evidence, there is no evidentiary basis for Defendant's argument that Officer Spencer did not properly perform procedures. *See Tice*, 550 S.W.3d at 564-65; *Burks*, 373

13

S.W.3d at 6-7.  Any deviation from the procedures discussed goes to weight, not admissibility.  *Tice*, 550 S.W.3d at 562 n.4.  Thus, the trial court did not abuse its discretion in admitting testimony about the HGN test results.  Point 4 is denied.

*Point 5 – PBT*

Defendant's fifth point challenges the admission of PBT evidence.   The following facts are relevant to this point.

As mentioned previously, the first time Officer Spencer asked Defendant to take a PBT, Defendant asked to do field sobriety tests instead.  According to the dash cam video, soon after Defendant made this request, another officer who had since arrived on the scene, said the "PBT is not admissible in court."  After Officer Spencer conducted field sobriety tests, he again asked Defendant to take the PBT.  The following exchange occurred:

> Officer Spencer:  "Let me ask you, will you take this PBT test for me real quick?"
>
> Defendant:  "I'm going to be totally transparent with you.  I think I'm a little over the legal limit…."
>
> Officer Spencer:  "Hey man, here's the deal.  It was a simple yes or no question. Like I said, it's not admissible in court. … Will you take the test for me real quick?"
>
> Defendant:  "Yeah."
> ….
>
> Other officer, after explaining how to take the PBT:  "It's either positive for alcohol or negative for alcohol."

Defendant then complied and took the PBT.

Defendant's point contends the trial court "should not have considered any evidence concerning, nor the results of, the [PBT]" because "law enforcement had wrongly assured [Defendant] on multiple occasions that the PBT would not be used against him" and Defendant relied on those statements to his detriment.  We find no merit in this argument.

14

The use of a PBT result is "narrowly restricted by statute." **State v. Morgenroth**, 227 S.W.3d 517, 521 (Mo. App. 2007). Section 577.021 provides that "[a] test administered pursuant to this section shall be admissible as evidence of probable cause to arrest and as exculpatory evidence, but shall not be admissible as evidence of blood alcohol content." § 577.021.3. Thus, "the result of a portable breath test is admissible to show an officer had probable cause to arrest." **State v. Roux**, 554 S.W.3d 416, 418 (Mo. App. 2017). It is well settled that "[t]he trial court is presumed to know and apply the law[.]" **State v. Selph**, 568 S.W.3d 561, 568 (Mo. App. 2019).

As an initial matter, we disagree with Defendant's interpretation of the exchange between Officer Spencer and Defendant about the PBT. As we understand the exchange, Defendant was concerned that the numerical value of the PBT would be used against him as evidence of his blood-alcohol content. The officers' assurances that the result of the PBT could not be used for that purpose is entirely correct. *See* § 577.021.3 (PBT result "shall not be admissible as evidence of blood alcohol content"). We further note that Defendant learned of the numeric result of the PBT – .197 – only because he asked. There is no indication in the record that the trial court relied upon the .197 PBT result to establish Defendant's blood-alcohol content. There was no need for the trial court to do so because the breathalyzer result from the police station test established that Defendant's blood-alcohol content was .139, above the .08 legal limit. *See* § 577.037.2. Defendant also was correctly informed that the PBT is used only to determine whether a breath test is positive or negative for alcohol. The result in this case – positive for alcohol – was offered to establish probable cause only, which again is a correct use of the PBT result under the statute. *See* § 577.021.3; **Roux**, 554 S.W.3d at 418. The trial court is presumed to know the law and would have

15

considered the PBT positive result for that purpose only. *See Selph*, 568 S.W.3d at 568. Accordingly, the trial court did not abuse its discretion in admitting evidence concerning the PBT. Point 5 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, C.J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCURS IN SEPARATE CONCURRING OPINION

MARY W. SHEFFIELD, J. – CONCURS



# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                )
                                  )
    Plaintiff-Respondent,      )
                                  )
v.                                )     No. SD35759
                                  )
JUSTIN KEITH LONG,                )
                                  )
    Defendant-Appellant.       )

**<u>CONCURRING OPINION</u>**

Points 1-3, at best, border upon frivolous given the facts and our standard of review. That said, I concur.

DANIEL E. SCOTT, P.J. — CONCURRING OPINION AUTHOR